The State *v.* Bissell.

Decree reversed.

*Wm. Penn Clarke,* for appellant.

THE STATE *on Relation &c. v.* BISSELL, *County Judge.*

ɪn submitting to the voters of a county a proposition to have the county issue bonds for stock in a railroad company, the form of the vote is sufficiently explicit when it reads : " For the Lyons Railroad," or "Against the Lyons Railroad."

A proclamation directing a vote of the people for or against issuing bonds to a railroad company, uuder the stipulation that they should be issued " only in the event of said railroad being constructed and running centrally through the county ; " held, that the vote being favorable to the railroad, the county judge had a right to issue the bonds on being made satisfied that said road will be built centrally through the county. Greene, J., *contra.*

*Appeal from Cedar District Court.*

*Opinion by* HALL, J. The petition in this case sets forth that on the first day of March, 1853, Bissell as county judge of Cedar county, made an order submitting to the legal voters of said county, the question whether the county would aid to construct a railroad to run through the county, by subscribing fifty thousand dollars to the capital stock of the Lyons, Iowa Central Railroad Company ; said amount

The State *v.* Bissell.

to be expended only in the event of said railroad being constructed, and running centrally through the county, and only to be applied in the construction of the same within the limits of the county. The payment to be provided for by the county issuing her bonds for the sum of fifty thousand dollars, payable in twenty years with interest at the rate of six per cent. per annum, payable semi-annually. The principal and interest of the same to be liquidated by an annual tax, to be continued from year to year, of two and one-half mills on the dollar, of county valuation, as shown by the assessment roll. The form in which the question was to be taken and voted for, was by ballot ; and which was to be printed or written, by those who voted for the proposition : " *For the Lyons Railrod,*" and those who voted against the proposition : " *Aaginst the Lyons Railroad.*" The election was held on the first Monday of April.

On the first Monday of May, the county court canvassed the polls given in the county for and against the proposition, and it appeared that a majority of all the votes was cast " for the Lyons Railroad ;" the result was duly recorded by the court. That on some subsequent day, unknown to the relators, but which the relators charge to have been subsequent to the day when the tax was levied by the county court to pay the interest on the bonds issued. The county judge made an entry on the records of the county court to the effect, " that, on its being made satisfactorily to appear to the county judge, that said railroad will be constructed centrally through Cedar county, and that the said county subscribe fifty thousand dollars to the capital stock of said railroad company, and that the same be paid for by the county issuing fifty bonds of one thousand dollars each, with interest at the rate of six per cent. per annum, payable semi-annually with coupons attached ; said bonds to be payable in twenty years, and that in accordance with the decision of the proposition aforesaid, that the principal

*22

The State v. Bissell.

and interest of said bonds, be paid by an annual tax of two and one-half mills on the dollar of the county valuation, as shown by the assessment; to continue from year to year until the whole of the principal and interest of said bond are paid, and it is further considered that the county judge make arrangements to secure the expenditure of the means raised by the sale of said bonds within the limits of Cedar county, all of which is in accordance with the proposition decided by the vote aforesaid."

That, on the second day of August, 1853, the county court levied a tax of one and one-half cents on the dollar, of the county assessment roll of said county, for the payment of the bonds issued on account of the Lyons, Iowa Central Railroad.

That said county judge had issued the bonds of the county, to the amount of twenty thousand dollars, to the Lyons, Iowa Central Railroad Company, by which the county is caused to acknowledge itself indebted to said company, in the sum of twenty thousand dollars, payable at the Bank of the Commonwealth, in the city of New York, on the first day of June, 1873, and to pay interest thereon at the rate of six per cent. per annum, on the first day of June and December, in each year.

That said judge is in readiness, and about to issue his warrants to the county treasury, to pay said interest to become due on said bonds, and that said railroad is not yet constructed. The petition charges the issuing of the bonds, and the levying of the tax as illegal, and the acts of the county judge in the premises as an unlawful exercise of his said office, and in violation of law, and prays for a prohibition, &c.

The answer of the county judge, states the submission of the questions to the voters of the county, and the result substantially, as alleged by the relators. That he had issued to the Lyons, Iowa Central Railroad Company, the sum of twenty thousand dollars in the bonds of the county, in payment of the stock taken in said company by the county.

That the company had located their road in accordance
with the proposition submitted to the people, and at the
time of issuing said bonds and taking the stock of
said company, were at work in the vicinity of Tipton, in said
county, and were doing a large amount of work, and that
the work was in accordance with the proposition adopted
by the people. That the company were constructing a
railroad centrally through said county; and that the com-
pany have done more than twenty thousand dollars worth
of work in said county. That the result of the election and
vote taken on said proposition, was duly published in
accordance with law.

To this answer, the relators filed their demurrer, on the
ground that the answer did not show the proceedings to
be legal. The court below sustained the demurrer, and
rendered a judgment for the petitioner, restraining the
county court from levying the tax, and exercising the power
claimed. The sustaining of the demurrer by the court below
is now assigned for error.

There are several points, made by the relators, which it is
not necessary to consider. We shall only allude to those
we consider material.

1. It is objected that, the form of the vote or ballot was
insufficient, and not in accordance with law." The form of
the vote or ballot adopted by the judge, was made to have
a direct relation to the proposition of submission. The
proposition is clear and explicit, and no voter who is capa-
ble of understanding anything, could be deceived or led
into error as to the effect of his vote.

2. It is objected that the entry in the record is not in
accordance with the proposition submitted to the people.
The latter being that the money is to be paid only in the
event of the *road being constructed.* The former, the
entry being "upon its being made satisfactorily to appear
to the county judge that the road is to be built," &c.

This point, as urged in the argument at bar, is wholly
based upon the supposed meaning of the language of the

proposition, as submitted to the people. "The money to be paid only in the event of the road being constructed centrally through Cedar county." It was contended that the county judge had no authority to apply the money in aid of the construction of the road, but must wait till it was completed through the county. The proposition was, whether the county *would aid* to construct a railroad to run through the county, &c. The money to be paid only in the event of the road being constructed centrally through the county. To aid in constructing the road after it is constructed, would be tautology in language; to say they would aid in building the road, and contend that they were only liable after the road was built, is a contradiction in terms. But it is contended that the subsequent clause, which says "*the money to be paid only in the event of the road being cosntructed,*" &c., is the governing language; that "*being contsructed,*" means fully completed. Such a construction will defeat the evident intention of the proposition. It would injure the character of the judge and the people for good sense. The Code does not authorize the raising of money to pay for a road already constructed and completed. It is only a proposition "whether the county will construct or aid to construct" a road, &c., that can be submitted: not, whether they will contribute money to a road already built. The real intention is clear, and that must govern.

3. It was contended that the county could not be a subscriber of stock, or a stockholder in a railroad corporation. This point was not urged, and the same question having been decided at the December term of this court, 1853, in the case of the *Dubuque and Pacific Rail Road Co.* v. *Dubuque county,*[a] is not examined. This decision is not intended to sanction or deny the legal validity of that decision, but to leave that question where that decision has left it.

Judgment reversed.

[a] *Ante,* 1.

The State *v.* Bissell.

*Dissenting opinion by* GREENE, J. I cannot agree with the majority of the court in this case. The citizens of Cedar county were called upon to vote for or against the propositions under the stipulations and restrictions contained in the proclamation. In submitting this question to the people, it is expressly declared that the amount shall be "*expended only in the event of said railroad being constructed and running centrally through the county.*" Under this safeguard and explicit condition, a majority of the voters were induced to favor the proposition, and loan the credit of their county to aid in building the railroad; well knowing that the county judge had no authority to issue the bonds or make the expenditure, until that condition was complied with. Had this condition been omitted in the judge's proposition, it is more than probable that the vote would have been against the railroad. It is conceded that the condition must have been performed before the county judge had the authority to give up any of the bonds; that the authority of the judge to act in the premises depended upon the vote; and that a strict compliance with the conditions stipulated in the proclamation, was necessary; and still it is concluded by the majority that the issue of bonds was justified, because the judge entered upon his record, " that being made satisfactorily to appear to the county judge that said railroad *will be* constructed through Cedarcounty," &c. Surely there is great incongruity in this reasoning.

As a condition precedent to the issuing of the bonds, the people in their vote required two things. 1st. That the road should be in a certain condition, to wit: *constructed.* "*Said railroad being constructed,*" is not equivocal. It gives no chance to infer a railroad in the future; an is to be, or will be railroad. It is a present entity. The word, "*being*" does not mean "*will be.*" The one is present, the other future. The *present* partic ple "*being,*" means " existing in a certain state."—Webster. The word "completed," is defined by the same lexicographer as

" finished, ended, perfected, fulfilled, accomplished."
2. The second thing required is, that the railroad shall be
" *running centrally through the county.*" I might go
again into definitions, if Mr. Webster and all of his profes-
sion had not been overruled by the majority opinion in
this case. Dictionaries and grammars, should of course,
yield to judicial authority. Still I must insist that a rail-
road cannot be *running* through a county, unless it is *in
esse.* A " will be" railroad—a thing *in posse*—cannot be
" running."

The vote of the people made the railroad " running cen-
trally through the county," a condition precedent to the
payment of the bonds; but the county judge makes the
payment of the bonds a condition precedent to the build-
ing of the road. And still, this extraordinary and unwar-
ranted assumption of power is bolstered up with the
avowal that the vote promised *aid* to construct the road;
that it would be " tautology" and a " contradiction" to
say that *aid* would be rendered after the work is comple.
ted; that " it would endanger the character of the judge
and the people for good sense."

Although thus pointedly admonished that my charac-
acter for good sense is endangered by entertaining the
views thus reprobated by my learned brethren, I must still
insist, alarming as the hazard may appear, that the *aid*
promised in this, as in all similar cases, was conditional;
that those conditions, as clearly shown by the record, had
not been performed; nor will any sane man venture the
opinion that they ever will be performed by the Lyons
Railroad Company.

Again, the *aid* promised, was the *credit* of the county,
to be made good by a payment in bonds, on the work
" being completed," &c. The vote gave the railroad com-
pany the *aid* of that *credit*, by promising that the county
should pay fifty thousand dollars in bonds, as soon as the
work was performed. Other railroad companies, and the
business world generally, regard such promises to pay as

The State *v.* Bissell.

very material aid. Why then should this aid of credit be regarded as contradictory and nonsensical in this case?

Besides, I can see no tautology, contradiction, or want of sense in the old maxim, " He is a good paymaster who pays when the work is done ;" especially when, as in this case, it is expressly stipulated " that the amount shall be expended only in the event of said railroad being constructed." Until that condition was fully performed, I hold that the county judge had no authority to issue any of the bonds ; that those issued by him were without consideration and in direct violation of the popular vote, and therefore should not be considered as valid at law. I conclude, then, that the judgment of the court below should be affirmed.

*W. H. Tuthill,* for appellant.

*W. G. Woodward* and *W. E. Leffingwell,* for appellee.