*J. M. Elwood,* contra.

---

## McCLURE *et al.* v. OWEN *et al.*

1. **Constitutional law: OBLIGATION OF CONTRACTS.** The constitutional prohibition against laws impairing the obligation of contracts, is not infringed by a judicial decision declaring a contract void which the parties had no legal or constitutional power to make.

2. —— **COUNTY BONDS FOR RAILROADS.** Our State Constitution confers no power upon the legislature to authorize counties to become stockholders in railroad corporations, nor to borrow money upon their bonds for the purpose of payment upon such stock; and such bonds are, therefore, void. Following *The State ex rel.* v. *The County of Wapello,* 13 Iowa, 389, and other prior decisions of this court.

3. —— **CONSTRUCTION OF STATE LAWS AND CONSTITUTIONS: FEDERAL COURTS.** The Supreme Court of the United States is not the final arbiter upon questions arising purely upon the construction of the statutes or Constitution of a State.

4. —— The binding authority of a decision of the Supreme Court of the United States, disregarding the construction which the highest judicial tribunal of a State has placed upon one of its statutes, or its Constitution, not admitted, but, in substance, denied.

5. —— **CONFLICT BETWEEN THIS AND UNITED STATES SUPREME COURT.** The history and grounds of the conflict between the Supreme Court of this State and that of the United States, growing out of the construction of our laws and Constitution, involving the validity of county railroad bonds, reviewed and stated by BECK, J.

6. —— **RULES OF CONSTRUCTION BY FEDERAL COURTS: STATE LAWS.** The decisions of the Supreme Court of the United States establishing the following principles governing the construction of State laws, cited by BECK, J.:

> 1. The settled construction of a State statute by the Supreme. Court of that State, is a part of the statute, and will be followed by the federal courts.

2. If the highest judicial tribunal of a State adopt new views as to the construction of a statute, and reverse its former decision, the federal courts will follow the latest settled adjudications.

7. —— CONSTRUCTION OF STATE CONSTITUTION. The foregoing rules and principles apply as well to the construction of a State Constitution as to the local or statute laws of a State.

8. —— The decision of the Supreme Court of the United States in *Gelpecke* v. *The City of Dubuque*, 1 Wallace, 206, shown to be unsupported by the prior decisions of that court.

*Appeal from Washington District Court.*

THURSDAY, DECEMBER 17.

IN CHANCERY. — The plaintiffs, who are tax payers of Washington county, in May, 1860, filed the original bill herein, to restrain Owen, the treasurer of the county, and others, from the collection of certain taxes for the payment of interest on bonds issued by the officers of the county in payment of a subscription by the county to the capital stock of the Mississippi and Missouri Railroad company. This railroad corporation was made a party defendant to the bill. The bill asks the relief of a perpetual injunction against the defendants, officers of the county and others, to restrain them from the collection of taxes for the payment of said bonds and the interest thereon, etc. The grounds for the relief, as shown in the bill, are irregularity in the acts of the officers of the county in issuing the bonds, and want of power in the county, under the Constitution and laws of the State, to issue such obligations.

The cause has been before in this court, and was reversed and remanded on account of a defect of parties, and because it was decided in vacation without consent. 21 Iowa, 134. After being remanded the proper parties were made defendants.

Certain holders of the bonds of the county, which are the subject of the litigation, made themselves defendants and answered the bill.

The District Court rendered a decree in accordance with the prayer of the bill.

The defendants, the Mississippi and Missouri Railroad company, and Durant, and other bondholders, appeal.

*Grant & Smith* for the appellants.

From the case of *Aspinwall* v. *Knox County*, down to the last one reported in 6 Wallace, the Supreme Court has held the right to require the tax, a part of the contract which was irrepealable. They have also held, that the decisions of this court which held these bonds consonant with the Constitution and Code, were a part of the laws of the land, and that bonds issued, while the court so held, would be enforced. If there had been anything irregular in the vote on the first series of bonds, it was validated by two acts of the legislature, authorizing their issue by the railroad company and the county judge (see acts January 25, 1855, pp. 192, 219), and the recital of their issue in pursuance of law has been held by the United States Supreme Court to be conclusive of regularity.

The difference of opinion between the Supreme Court of the United States and this court must be regarded as settled now.

When the Supreme Court of the United States has decided that a State court decision impairs the obligation of a contract, their decision is not only final but binding on this court, and on such questions the federal courts are not governed by the decisions of the State courts. *Branch Bank* v. *Skelly*, 1 Black. 443; *Provident Institution for Savings* v. *Com. Mass.* 6 Wallace.

The cases in the federal courts on these and like bonds are familiar to the court. We append a list for reference. *Aspinwall* v. *Knox County*, 21 How. 539, 524, 376; *Mercer County* v. *Hackett*, 1 Wallace, 83; *Gelpke* v. *Dubuque*, id. 173; *Meyer* v. *Muscatine*, id. 384; *Van Hortup* v. *Madison County*, id. 291; *Thompson* v. *Lee County*, 3 id. 327; *Havameyer* v. *Iowa County*, id. 274; *Marshall* v. *Skent*, 5 id. 772; *Galena* v. *Amy*, id. 705; *Van Hoffman* v. *Quincy*, 4 id. 535; *Mitchell* v. *Burlington*, id. 270; *U. S. Riggs* v. *Johnson County*, 6 id. 166; *U. S. Weber* v. *Lee County*, id. 210; *U. S. Weber* v. *Keokuk*, id. 514; S. C., id. 518.

We desire to present this point solely, that we may not be embarrased with technicalities if the court is against us. The further agitation of the difference of opinion between this court and the United States Supreme Court is not to be encouraged by any court. It is the interest of the State, that litigation should end. ⟨This court has adhered to its opinion with constancy hoping to influence the final arbiter. It has failed, and we trust that they will consider it as honorable fairly to yield, as it was manful to contest.⟩

*Patterson & Rhinehart* for the appellees.
(No brief found on file.)

BECK, J. — Certain grounds of error, as that after the reversal of the cause in this court it could not be again tried in the court below; that the bondholders, who are defendants, have recovered judgment upon these bonds in the federal courts, and that proper application was made to and refused by the court below to transfer the case to the United States Circuit Court, are pointed out in the printed argument of appellants' counsel; but they expressly ask a decision on another ground and desire that point to

be decided solely.   We do not hesitate to comply with
the wishes so plainly expressed by appellants' counsel.
They, in fact, amount to a waiver of errors on their part,
if any should be found in the points they suggest.   If the
parties are content with such rulings of the court below,
so far as to ask us to omit a review of them, we know of
no reason why we should not comply with their request.

The only point made by appellant's counsel which they
call upon us to decide, is, in their language, this :  " The
decision of the court below impairs the obli-
gation of the contract, made with the bond-
holders on commercial paper, that a specific
tax should be levied to pay the bonds."   This court has
often held, that, under the Constitution of the State, bonds
of the character of those involved in this suit can not be
issued by the counties and municipal corporations, and are
therefore void ; that contracts of this kind are unauthor-
ized and forbidden by the Constitution, and cannot there-
fore be enforced by the courts of the State.   The deci-
sions, in thus delaring such instruments void, in effect,
hold, that they are not contracts at all, inasmuch as the
counties and cities issuing them are in no manner bound
by them.   Without at length pointing out the distinc-
tions, it is very obvious that a decision of a court declar-
ing a contract void *ab initio* — an instrument to be no
contract at all — is a very different thing from a decision
impairing the obligation of a valid contract, whereby a
valid instrument is rendered inoperative and its binding
effect destroyed.   It is the duty of courts, not only to
construe contracts and to apply them to their proper sub-
jects, but also to pass upon their binding effect and obli-
gation, and if from want of power in the obligors to con-
tract, or from want of form in the contracts themselves,
or because they are contrary to public policy, or contravene
the laws of the State, either as contained in the Constitu-

1. CONSTITU-
TIONAL LAW:
obligation of
contracts.

McClure v. Owen.

tion, statutes, or adjudications of the courts, they will be declared void and will not be enforced. This power is continually exercised, and questions as to the validity of contracts probably arise more frequently in the courts of our State than any other class of questions. The power of the courts in such cases to determine the invalidity of contracts cannot be denied. It is the power exercised in the case before us, where a contract is declared void because it contravenes the Constitution of the State.

Laws impairing the obligation of contracts are repugnant to express provisions of the Constitution of the State as well as the United States.

The prohibitions of these constitutional provisions extend to laws that impair the obligation of valid, existing contracts, and cannot be extended to judicial decisions which declare an instrument void because it contravenes the Constitution, or is in conflict with public policy, and is, therefore, held to be in fact no contract at all. A contrary doctrine has never been advanced in any court of the Union, so far as we are advised. No more fit occasion for the discussion of this doctrine by counsel, and its recognition by the courts, if it be true, could have been presented, than the cases in the State and federal courts growing out of the frequent litigations upon bonds of the character of those involved in the case before us. We have not observed that in such cases it has ever been advanced by counsel or referred to in the opinions of the court, except in one instance, when it is denied that the question can with reason be raised.

We are asked by appellants' counsel to change the later ruling of this court and abandon the principles of 3. Construction the adjudications so frequently heretofore announced in the cases that have arisen upon these county and city railroad bonds. This we are asked to do, not because these rulings and the

<span>3. Construction of State laws and Constitution; federal courts.</span>

principles of construction of our Constitution upon which they are based are unsound, but because the Supreme Court of the United States, which is termed, in the language of appellants' counsel, the final arbiter upon these questions, has disregarded the decisions of this court, and in cases before it, has overruled them.

The questions determined, and upon which there has thus arisen a conflict between this court and the federal courts, are purely those arising upon the construction of the laws and Constitution of our own State. The language of counsel is, therefore, incorrect.

. [The Supreme Court of the United States is not in cases of this kind the final arbiter.] That august tribunal, the court of last resort in all cases within the federal jurisdiction, as prescribed by the Constitution and laws of the Union, is not charged with the grave duty and great power of construing the Constitution and laws of the States, except where they may be in conflict with the federal laws and Constitution, and of establishing thereby a rule of construction obligatory upon the State courts. In questions of this kind it is, in no sense, the final arbiter, but by a course of adjudications beginning at the foundation of the government and extending to the present time, it is required to look to the courts of the States for the rules of construction of their respective laws and Constitutions. Upon such questions, then, it is, in law and in fact, inferior in authority to the courts of the States. It has the power to disregard the decision of the State courts upon such questions and to enforce its own decisions in a class of cases over which it has jurisdiction; but the superior authority of its decisions upon these questions has not been and never can be admitted. We can not, therefore, be expected to conform our rulings to the opinion of that court upon questions of this char-

acter when they are in conflict with the adjudications of this court.

A brief history of the conflict between this court and the United States Supreme Court, and the grounds of the conflicting decisions, is not out of place here. No attempt will be made to give the reasons upon which are based the rulings of this court. That has been fully, clearly and ably done in the cases which will be referred to. It is held in *The State ex rel.* v. *The County of Wapello* (13 Iowa, 389) by a unanimous court, in a carefully prepared and well considered opinion, after elaborate and profound argument by counsel among the ablest in the State, that the Constitution·confers no power upon the legislature to authorize counties and cities to become stockholders in railroad corporations, and to borrow money upon their bonds for the purpose of payment upon such stock, and that under the Constitution they are forbidden so to do. This decision was made in June, 1862, and has been followed and reaffirmed by the following cases: *Myers* v. *Johnson County*, 14 Iowa, 47; *McMillan et al* v. *Boyles et al.*, id. 107; *Rock et al.* v. *Wallace*, id. 593; *Smith* v. *Henry County*, 15 id. 385; *Ten Eyck* v. *The Mayor of Keokuk*, id. 486; *Chamberlain* v. *City of Burlington*, 19 id. 395.

The principles of these adjudications, independent of their authority, have the unqualified approval of this court as now constituted. We see no reason to depart from their rulings. It would answer no useful purpose to restate here the arguments in support of the doctrine they announce; it will not, therefore, be attempted.

Prior to these cases, a different doctrine touching the powers of counties and cities to become stockholders in railroad incorporations and to borrow money for that purpose, had obtained in this court, though never announced in a unanimous decision, always doubted, feebly presented when first announced, and never afterward at-

*5. — conflict between this and U. S. Supreme Court.*

tempted to be sustained upon reason, but merely assented to, without an effort to support it.

The constitutional question is briefly discussed in the majority opinion in *Dubuque County* v. *The Dubuque and Pacific Railroad Co.* (4 Greene, 1), which is the first case in which it arose. Two paragraphs are devoted to it, and its discussion is as unsatisfactory to the advocates of the doctrine as to those who oppose it. A dissenting opinion, in which the question is fairly and ably discussed, was rendered by one of the justices. The majority opinion was never filed with the clerk, and was not published until five years after the announcement. It was then published by Judge Greene, who had ceased to be one of the justices of the court and its official reporter. In no subsequent case is the question discussed. In three cases, by a majority of the court, the decision in *Dubuque County* v. *Dubuque and Pacific Railroad Co.* is sanctioned. In two other cases it is referred to as having been made; and in four cases, usually cited to sustain the decision, the question involved was not argued by counsel nor decided by the court. In *The State ex rel.* v. *Bissell* (4 Greene, 328), the constitutional question, was not argued, and the court did not pretend to decide it. The opinion, in express words, waives the question and leaves it where it was left by the first decision. In *Clapp* v. *Cedar County* (5 Iowa, 15), the question was not discussed. *Dubuque County* v. *The Dubuque and Pacific Railroad Company*, is followed by the majority of the court, though doubts as to its correctness is expressed in language that amounts to a denial. Chief Justice WRIGHT, in a dissenting opinion, denies *in toto* the authority of the decision. In *Ring* v. *Johnson County* (6 Iowa, 265), the question is not discussed, and is passed by with the remark, that the court has seen no reason to change its opinion since *Clapp* v. *Cedar*

*County*, 5 Iowa, 15. Chief Justice WRIGHT again dissents. In *McMillan* v. *Lee County*, 3 Iowa, 311; same case, 6 Iowa, 304 and 393; *Games* v. *Robb*, 8 id. 193; *State ex rel.* v. *Board of Equalization of Johnson County*, 10 id. 157, which are often cited in support of the doctrine of *Dubuque County* v. *Dubuque and Pacific R. R. Co.*, — the constitutional question is neither raised or argued by counsel, nor discussed or determined by the court; neither was its determination necessary, as the cases passed off on other questions. In *Stokes* v. *Scott County* (10 Iowa, 166), the chief justice holds against the authority of *Dubuque County* v. *The Dubuque and Pacific Railroad Co.*, while one of the justices assents thereto with doubts expressed in the strongest language. The other justice asents to the doctrine of the case upon the constitutional question. Out of seven judges who thus far had passed upon the question, four had expressed dissent to the interpretation of our State Constitution conferring power upon the counties to become stockholders in railroad corporations and to borrow money for that purpose. Not one unanimous decision had been made.

While the adjudications upon this question rested upon such uncertainty, the *State ex rel.* v. *Wapello County*, was determined and followed by the cases above mentioned, each decided by a unanimous court and all holding clearly against the power. Prior to these decisions, it cannot be claimed with fairness, that the question was settled by the adjudications of the court. There was more weight of judicial authority against the doctrine recognized by the decisions than in its support. No one could have been so far deceived as to believe that it was not an open question, and that future decisions thereon would not depend upon the force of the arguments in support of the principles upon which the question depended for its solution, rather than upon the authority of

prior adjudications.   As a matter of fact it was regarded
by the profession in the State as an open question, and
no respectable counsel, conversant with the adjudications,
would have given an opinion, based upon them, that the
question was finally settled.   After the case of *The State
ex rel.* v. *Wapello County*, and the cases following it,
above cited, there has been and can be no doubt, that the
question, so far as the courts of this State are concerned,
is at rest.

Such being the history and the condition of the adjudi-
cations of this question in Iowa, the case of *Gelpecke* v.
6. —— rules of *The City of Dubuque*, 1 Wallace, 202, was
construction
by federal     determined in the United States Supreme
courts : state
laws.          Court, wherein the later rulings of this court
are disregarded, and the earlier and overruled decisions
are followed.   The only point determined in that case
which we will notice is this one : that, in case of conflict-
ing decisions of State courts, giving construction to the
laws and Constitution of their own States, whereby con-
tracts are affected, the federal courts will follow the
decisions which obtained at the date of the contract.   A
brief reference to the decisions of the Supreme Court of
the United States will determine whether this is in
accordance with prior rulings of that court.

The settled construction of a State statute by the
Supreme Court of that State, is a part of the statute, and
will be followed by the federal courts.   *Massingill* v.
*Downs*, 7 How. 767 ; *Nesmith* v. *Sheldon*, id. 812 ; *Van
Rensselaer* v. *Kearney*, 11 id. 297 ; *Webster* v. *Cooper*, 14
id. 504 ; *Shelby* v. *Gay*, 11 Wheat. 367.

Such a decision will be followed by the United States
Supreme Court though not in accordance with its
opinion.  *McKeen* v. *DeLancy's Lessee*, 5 Cranch, 22.

The decision of the State Supreme Court settling a
rule of construction of devises of lands, is binding upon

the federal courts. *Jackson* v. *Chew*, 12 Wheat. 167; *Henderson* v. *Griffin*, 5 Pet. 151.

So is a decision of the State court upon a State law of descents. *Gardner* v. *Collins*, 2 Pet. 58.

So upon the statute of uses. *Henderson* v. *Griffin*, 5 Pet. 151.

The decisions of State courts affecting the title of lands are binding authorities upon the courts of the United States. *Rundle* v. *Delaware & H. R. Canal*, 14 How. 93; *Polk's Lessee* v. *Wendall*, 9 Cranch, 87; *Thatcher* v. *Powell*, 6 Wheat. 119; *Elmendorf* v. *Taylor*, 10 id. 152; *Ross* v. *Barland*, 1 Pet. 655.

"If the highest judicial tribunal of a State adopt new views as to the proper construction of a statute, and reverse its former decision, the federal courts will follow the latest settled adjudications." *United States* v. *Morrison*, 4 Pet. 124; *Greene* v. *Neal's Lessee*, 6 id. 291; *Leffingwell* v. *Warren*, 2 Black. 599.

Other cases decided in the same court sustaining the principles above stated could be cited.

In *Greene* v. *Neal's Lessee*, the United States Supreme Court overruled two of its own decisions in order to follow the decision of a State court upon the construction of a State statute. Justice McLEAN, in delivering the opinion of the court, uses the following language, which is quite pertinent in the discussion of the question now under consideration:

"In a great majority of the causes brought before the federal tribunals, they are called to enforce the laws of the States. The rights of the parties are determined under those laws, and it would be a strange perversion of principle if the judicial exposition of those laws by the State tribunals should be disregarded."

In discussing the question whether it is obligatory upon the federal courts to change their rulings so as to

conform to a subsequent decision of the State court, he uses the following forcible argument:

"If the construction of the highest judicial tribunal of a State forms a part of its statute law. as much as an enactment by the legislature, how can this court make a distinction between them?

There could be no hesitation in so modifying our decisions as to conform to any legislative alteration in a statute; and why should not the same rule apply when the judicial branch of the State government, in the exercise of its acknowledged functions, should, by construction, give a different effect to a statute from what had at first been given to it. The charge of inconsistency might be made with more force and propriety against the federal tribunals for a disregard of this rule, than by conforming to it. They profess to be bound by the local law, and yet they reject the exposition of that law which forms a part of it. It is no answer to this objection that a different exposition was formerly given to the act, which was adopted by the federal court. The inquiry is, what is the settled law of the State at the time the decision is made? This constitutes the rule of property within the State by which the rights of litigant parties must be determined."

It does not require argument to show that the principles of the decisions above cited apply to the case of a con-

7. —— construction of a State Constitution by a State construction of State Consti- court. The same principles that require the tution. federal courts to follow the decisions of the State courts in construing statutes, and to recognize rules of local law, require the federal courts to follow the construction given the Constitution by the highest State tribunal. There is no distinction that warrants the disregard of the rule in cases involving the construction of the State Constitution. This seems to be admitted in

*Gelpecke* v. *The City of Dubuque,* 1 Wallace, 202, and the point is directly so ruled in *Nesmith* v. *Sheldon,* 7 How. 812, and *Webster* v. *Cooper,* 14 id. 504, above cited.

The only cases that are cited as conflicting with this well established course of adjucations are *Rowan* v. *Runnels,* 5 How. 134, and.the *Ohio Life and Trust Company* v. *Debolt,* 16 id. 432.

In the first named case the court refuse to abandon a former ruling and follow the decision of the Supreme Court of a State construing its Constitution.

The highest tribunal of the State of Mississippi held that, by the Constitution of that State, the importation and sale of slaves as merchandise was prohibited, and that all contracts for the sale of such slaves were void. Before this decision the Supreme Court of the United States had given a different construction to the Constitution of Mississippi, and in the case cited Chief Justice Taney, delivering the opinion, refused to change their ruling and follow the adjudication of the State court.

Without attempting to point out that this case is not authority for disregarding decisions of State courts when no conflicting prior decision of the federal court exists, which is so clearly done by Mr. Justice MILLER in his able dissenting opinion in *Gelpecke* v. *The City of Dubuque,* we may remark, that it is in conflict, in principle, with the prior decisions of the same court, above cited. The facts of this case will obtrude themselves upon our attention, and suggest the inquiry whether the interest of the institution of slavery, the extension of which was favored not only by the great judge who announced the opinion in the case, but by the federal Supreme Court of that day, did not, in some degree, mould the doctrine of the decision.

*The Ohio Life and Trust Company* v. *Debolt* does not

McClure v. Owen.

support the doctrine of the majority opinion in *Gelpeke* v. *the City of Dubuque.* It was brought into the United States Supreme Court upon a writ of error to the Supreme Court of the State of Ohio, and the question presented was whether a statute of the State of Ohio, taxing certain banks, impaired the obligation of a contract contained in the charters of those banks or the law under which they were organized, exempting them from such taxation. The judgment of the Supreme Court was affirmed, and the law imposing the tax was held not to impair the obligation of any contract. Former decisions of the Ohio courts were overruled by the decision so affirmed, and thus, in fact, the later decision was followed by the federal court, though not upon its authority. In answer to the argument that the Federal court should follow the later adjudication of the State courts upon the question involved, Chief Justice TANEY uses the language quoted by Mr. Justice SWAYNE in *Gelpecke* v. *The City of Dubuque,* in support of the rule thus announced, and refers approvingly to the doctrine announced in *Rowan* v. *Runnells,* noticed above.

The substance of the language is this: that, if a contract, when made, according to the decisions of the courts of a State, was valid, it cannot be impaired by subsequent decisions changing the construction of a law. But it is apparent from the context, that the rule is intended to apply in adjudications upon writs of error to the courts of the States, and not in cases originally brought in the federal courts. At all events, the point thus made was not in the record, and the opinion was concurred in by at most but three judges.

It is a noteworthy fact, that this feeble *dictum* is absolutely the only authority cited by Mr. Justice SWAYNE, in support of the ruling of the court in *Gilpecke* v. *The City of Dubuque,* a ruling that sets at naught the settled

adjudications of the supreme tribunal of a State in the construction of its Constitution. This one *dictum* is the only authority relied upon for [this stretch of judicial power by the federal court, as alarming as it is regardless of precedents in that very court.]

It will be observed, that, while it is quite true several decisions of this court, which, by no means, as we have seen, settled the questions involved, are overruled by the series of adjudications declaring the county and city railroad bonds void, the Supreme Court of the United States in sustaining them have overruled many cases in that court of well established authority, and disregarded principles at the very foundation of the federal judicial power, without the restraining influence of which, the country will be launched upon the stormy sea of judicial conflict between State and federal courts, or will avoid this by succumbing to the decrees of one great federal arbiter of judicial questions.

While *Gelpecke* v. *The City of Dubuque*, as we have seen, is unsupported by authority, the opinion professes to be planted, in its own language, upon "truth, justice and law." These, according to the theory of our jurisprudence, are to be found in the settled adjudications of the courts; and when judges leave the well trodden path of precedent, they are apt to find error and injustice. Courts can not with safety disregard the law as established by a course of adjudications. While such decisions may, in some cases, attain the ends of justice, the probability is, they will work quite a different result, and by disturbing precedents, will have the general effect of undermining the very fabric of our system of jurisprudence. [Not only is the decision under consideration remarkable for bold disregard of precedent, but it is distinguished from all other decisions of the august tribunal that rendered it, as well as from those of all other high courts, in the use of lan-

guage extremely disrespectful toward the Supreme Court of a State. It is to be hoped that it may not be followed as a precedent for like offenses against judicial propriety.]

Affirmed.

Mr. Justice WRIGHT, having been of counsel in the cause in the court below, took no part in its determination here.