## Case No. 7,810.

### KING et al. v. WILSON et al.

[1 Dill. 555; 13 Int. Rev. Rec. 36; 3 Chi. Leg. News, 137; 5 Am. Law Rev. 562.] [1]

### Circuit Court, D. Iowa. Jan., 1871.

#### RAILROAD AID TAX LAW—RELATIONS OF STATE AND FEDERAL COURTS.

1. The federal courts, sitting in a state, follow the latest decision of the highest tribunal of the state, as to validity and construction of a state statute; and the case is an exceptional one in which the federal court is justified in holding a statute void, because in conflict with the constitution of the state after the supreme court of the state has pronounced it to be valid.

[Cited in Powder River Cattle Co. v. Board of Com'rs, 45 Fed. 325.]

2. The latest decision of the state supreme court, holding that the citizen might constitutionally be taxed, and the proceeds given as a gratuity or donation to aid in the building of the roads of private railway companies, was followed, although that decision overruled a long and settled course of adjudication by the same tribunal the other way, and the prior decisions were regarded as sound expositions of the constitution of the state.

[Cited in Black v. Elkhorn Min. Co., 47 Fed. 603.]

[Cited in Commissioners of Leavenworth Co. v. Miller, 7 Kan. 516.]

3. The case made in the bill involving no contract made upon the faith of the prior decisions of the state court, does not fall within the exception to the rule recognized by the United States supreme court in the Iowa bond cases. Gelpcke Case, 1 Wall. [68 U. S.] 75; Butz v. Muscatine, 8 Wall. [75 U. S.] 575.

[Cited in Henning v. U. S. Ins. Co., Case No. 6,366.]

4. While it may be true that non-resident taxpayers citizens of different states, may join in a bill in equity to enjoin the collection of an illegal tax on their several property, it seems, as to each so entitled to join that there must be in dispute an amount exceeding five hundred dollars.

[Cited in Schulenberg-Boeckler Lumber Co. v. Town of Hayward, 20 Fed. 424; Rich v. Bray, 37 Fed. 276; Skirving v. National Life Ins. Co. 59 Fed. 745, 8 C. C. A. 241.]

On motion for injunction.—This is a bill in equity filed in the circuit court of the United States for the district of Iowa, asking for an injunction to restrain the collection of a railroad tax on the property of the complainants, situate in Marion township, Linn county, Iowa. The plaintiffs, several in number, allege that they are, respectively, citizens of Kansas, Indiana, Ohio, and Missouri. The defendants are the county treasurer, and the township trustees and clerk. The bill alleges, in substance, that "the matters in controversy herein exceed the sum of five hundred dollars, exclusive of costs; that the plaintiffs are severally the owners of a large amount of real estate in Marion township, Linn county, Iowa, and that they unite for the purpose of bringing this suit; that the taxes levied thereon, and whose collection is sought

to be restrained, amount to the sum of fifteen hundred dollars. The bill sets out the act of the Iowa legislature of April 12, 1870 (Laws 1870, p. 105), which by its terms authorizes townships, towns, and cities to vote, by a majority of the votes polled at the election, a tax for the benefit of, and payable to, the railroad company intended to be aided thereby, the municipal or public corporation, or the tax-payer thus voting aid, getting no stock or other specific thing in return, nor anything except the incidental benefits resulting from the building of the road. It alleges that in August last, under color of this act, a five per cent. tax was voted, and subsequently levied in favor of the Sabula, Ackley & Dakota Railroad Company on the property of the plaintiffs, situated in the aforementioned township. The bill charges that the act of April 12, 1870, is void, because in conflict with the constitution of the United States, and that of the state of Iowa, and that the defendants will enforce the collection of the tax thus voted and levied, unless restrained. The prayer is for a preliminary injunction against the collection of the tax, and that it be made perpetual on the hearing. The present application is for an order allowing a temporary injunction.

Scott & Ercanbrack, and Rush Clark, for complainants.

W. G. Thompson, and Edmonds & Ransom, for defendants.

DILLON, Circuit Judge. This application presents a question of great moment, and one which both parties have joined in asking to have decided upon its merits.

The bill is brought upon the ground that the act of April 12, 1870 (Laws 1870, p. 105), authorizing townships, towns, and cities to vote a tax upon the property of all persons situated therein for the benefit of, and to be absolutely given to, the railway company, whose road is intended to be aided, is void, because in conflict with the constitution of the United States, and that of the state of Iowa.

It is claimed to violate that provision of the fifth article of the amendments to the constitution of the United States which declares that "No person shall be deprived of life, liberty, or property without due process of law; nor shall private property be taken for public use without just compensation." But these limitations apply alone to the exercise of power by the government of the United States, and have no reference to the state governments. Baron v. Baltimore, 7 Pet. [32 U. S.] 243.

But it is chiefly insisted that the act is void because it is in conflict with the constitution of the state, and in support of this objection the counsel for the complainants rely upon the decisions of the supreme court of the state, hereafter referred to, and which they maintain settle the question in this state against

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 5 Am. Law Rev. 562, contains only a partial report.]

the constitutional validity of legislation of the character of the act in question. On the other hand, the counsel for the defendants contend that the last decisions of the supreme court of the state, made a few months since, are in favor of the validity of the act, and they insist that it is the duty of the federal court, sitting in Iowa, to follow these without examination, because the question relates solely to a statute of the state, and they are the very latest decisions of its highest tribunal on the subject.

To this the complainants reply that the decisions referred to though the latest, are not the "latest settled adjudications," and that it is not the duty of the federal courts to follow against a long line of decisions the other way, decisions just made, and which, in the language of the supreme court of the United States, may prove but oscillations in the course of the final judicial settlement of the question. Gelpcke v. Dubuque, 1 Wall. [68 U. S.] 175, 205. Thus it becomes necessary to ascertain what has been decided by the supreme court of the state, with reference to the constitutional competency of the legislature to authorize taxation of the property of the citizen to aid in the construction of the roads of private railway corporations in the vicinity of the property to be taxed.

In 1853, the supreme court of the state (one judge dissenting) held the constitutional validity of bonds of counties issued to railroad companies in payment for stock subscribed. That is to say, it was then decided that there was nothing in the constitution of the state to prohibit the legislature of the state from authorizing counties to issue bonds to railroad corporations in return, or as payment for stock subscribed, and to pay the debt thus created by taxes levied on the property owners of the county. Dubuque Case, 4 G. Greene, 1.

Under this decision the counties and cities of the state issued their bonds for millions of dollars in aid of various railway enterprises. In 1862, the question of the legal liability to pay these bonds came before the supreme court of the state for determination, in the well known Wapello County Case, 13 Iowa, 388; and the court, on full consideration, held such bonds to be unconstitutional.

That the supreme court of the state has ever decided such legislation unconstitutional has recently been controverted, and so it becomes necessary to examine the question. On examining the Wapello County Case, I find it so clear that the constitutional question was decided, that it ought to be sufficient to refer the reader to the case itself. After a lengthy discussion of the question, Lowe, J., for the court, states the result on this point thus: "For the various reasons which we have herein stated, we have to say that we are deliberately of the opinion, that the general assembly of the state cannot pass a valid law authorizing counties in their corporate capacities to become stockholders in railroad companies."

Every lawyer in the state knows that this opinion was understood to decide the constitutional question; and from that day to this, neither in the supreme court of the state, nor in any inferior tribunal, has any judgment of recovery been rendered on such bonds, though many of them were either authorized or ratified by express legislative act, as I shall hereafter show. At the next term (December, 1862), the Wapello Case was followed, and the question that there can be no recovery on coupons declared to have been "settled so far as this court is concerned." Myers v. Johnson, Co., 14 Iowa, 47.

At the same term an injunction to restrain county officers from levying and collecting taxes to pay interest on railroad bonds was asked, and a final decree entered in the supreme court agreeably to the prayer of the petition. McMillan v. Boyles, Id. 107. At the next December term (1863), in Smith v. Henry Co., 15 Iowa, 385, the plaintiff sought to recover against the county on coupons, and a demurrer to his petition was sustained. In affirming the judgment and referring to the Wapello County Case, and other cases following it, Wright, J., said: "The want of power under our constitution and laws is so clear that we cannot longer regard it as open for controversy. In this state it must be considered settled. It is true a different ruling was made in some of the earlier cases by our predecessors, but those cases have all been examined and overruled, and this with a full consciousness of the consequences to the state and the bondholder."

The same doctrine was announced and followed at the same term in Ten Eyck v. Mayor of Keokuk, Id. 468. At the December term, 1865, in Chamberlain v. Burlington, 19 Iowa, 395, relating to the validity of city bonds to a railroad company, Cole, J., delivering an opinion of the court, remarks: "The following cases determined by this court hold that counties have no constitutional power or legislative authority to bind themselves by the issuing of bonds for railroad stock."

Without consuming time by adverting the other decisions of the supreme court of the state, to the same effect, I come down to the case of McClure v. Owen, 26 Iowa, 243, decided on the 17th day of December, 1868. Judge Beck, delivering the opinion of the court, said: "This court has often held that, under the constitution of the state, bonds of the character of those involved in this suit (to railway companies for stock), cannot be issued by the counties and municipal corporations, and are therefore void; that contracts of this kind are unauthorized and forbidden by the constitution, and cannot be enforced by the courts of the state." And accordingly in that case a bill to restrain the collection of a tax to pay such bonds was sustained.

This was as late as the December term,

1868. At the next June term of the supreme court (1869), Dillon, C. J., in Hanson v. Vernon, 27 Iowa, 35, after referring to the prior decisions, said: "If anything can be said to be settled in this state, it is that, under the constitution there is no legislative power to endow public or municipal corporations with the faculty of subscribing to the stock of a railroad company, and to levy a tax on the inhabitants to pay therefor. Everybody so understands it. I have so understood it ever since I have been upon the bench, and have never felt myself at liberty to regard it as an open question. Not one of the counsel concerned in this cause has asked the court to overturn its decisions, and to hold such subscription and tax to be constitutional. It being settled then, that they are unconstitutional, it would justly disgrace this tribunal and the state, if we should hold the present act to be valid (act of March 22, 1868, hereafter mentioned), unless it is in fact different from the other question; and in my opinion, the effort of the counsel to show a distinction in favor of the act of 1868 has not been successful, and if any distinction can be drawn, it is one unfavorable to the act under consideration."

Thus we have numerous adjudications, and at different times, an express declaration from each judge of the supreme court of the state, that the constitutional question had not only been decided, but settled, and this line of decisions extends in an unbroken series from 1862 to 1869.

If we go beyond the state, we find that the federal courts have understood that the constitutionality of the bonds was decided and denied by the Wapello County Case.

Referring to that case, Mr. Justice Miller, thoroughly conversant as a citizen of Iowa, with the whole subject, in the Gelpcke Case, 1 Wall. [68 U. S.] 175, 208, said: "The supreme court of Iowa, in a very elaborate and well reasoned opinion, held that there was no constitutional power in the legislature to confer such authority (to issue bonds to pay for stock in railway companies) on the counties, or any municipal corporation. This decision was made in a case where the question fairly arose, and where it was necessary and proper that the court should decide it. It was decided by a full bench and with unanimity."

The counsel in the cause and the opinion in the case agree that the state supreme court decided that such bonds were void, because no legislative authority could be given to issue them. The legislature of Iowa had, by the act of January 28, 1857, expressly authorized the city to issue bonds in the Gelpcke Case [supra], and hence, the only question before the court was one of constitutional power. And so in Lee county, the bonds issued had been legalized by an act of the legislature (St. 1857, c. 258), and this act was held valid by the supreme court, and to have the same effect as if the power by the legislature had been antecedently conferred. McMillen v.

County Judge, 6 Iowa, 391. Here there was express legislative authority for the bonds, and the court decided in that case that the tax-payers could not maintain a bill to enjoin the collection of taxes to pay them. This was in 1858, before the Wapello County Case. After the Wapello Case was decided, the same case of McMillan v. Boyles was brought before the supreme court on a bill of review, and following the Wapello County Case, the same injunction which they had refused in 1858 (6 Iowa, 381, supra), they granted in 1862 (14 Iowa, 107).

Here was legislative authority for the bonds, and so it is thus made as clear as a mathematical demonstration that the decision last made must have been on the ground that the bonds and tax were unconstitutional. It could have been made on no other ground, as was shown by Mr. Justice Wright, in Hanson v. Vernon, 27 Iowa, 64, 65.

The legislature ratified the bonds issued by the city of Davenport (Acts 1855, p. 85), and those issued and to be issued by the city of Keokuk (Acts 1856, p. 44), and those of Fort Madison (Id. p. 73), and expressly authorized those issued by Lee county (Acts 1857, p. 227), by Dubuque (Id. p. 270), by Clayton county (Id. p. 296), by Lee county, by two separate acts (Id. pp. 405, 415), and authorized and legalized others (Acts 1856, p. 75; Acts 1857, p. 447). And see, also, two acts approved January 28, 1855 (Laws 1855, pp. 192, 219). They are entitled respectively, "An act regulating interest on county and city bonds," and "An act regulating the issue of county and corporate bonds."

Though there was this antecedent legislative authority in many cases, and this legislative ratification in others, no judgment on such bonds in the state courts ever was or could be obtained after the decision of the Wapello County Case, because it was there held that bonds of this character were void, beyond any power of the legislature to ratify or cure. Hence, after that decision, the bondholders, by necessity, were compelled to resort to the federal courts, which, as we have seen, held that they would follow the decisions of the state court in force when the bonds were issued, and which affirmed their validity. And out of this denial of the constitutional power to issue such bonds arose the unfortunate conflict of opinion, which it was at one time feared would result in a conflict of jurisdiction between the state and the national tribunals, a controversy to which the attention of the whole country was attracted.

In view of this legislative and judicial history, it seems almost incredible that it could be claimed by any one that the supreme court of the state had never decided that such bonds were unconstitutional. Yet, in the late decision of the supreme court, in Stewart v. Board of Sup'rs of Polk Co., 30 Iowa, 9, the court deny that such bonds had ever been held unconstitutional, and assert that all that was ever said on the subject was mere dicta.

That there may be no misapprehension, I quote: "When it is remembered that until the passage of the act of 1868, the legislature of Iowa had never passed any act purporting to authorize anything of the kind, and that no such question was before the court in the Wapello County Case, or in any of the other numerous cases involving the validity of city and county railroad bonds, it will be plain enough that whatever may have been said about the constitutionality of an act authorizing the issue of bonds by municipal corporations was only dictum."

In this the learned court is doubly mistaken, as we have above demonstrated: (1) In that the legislature of Iowa had passed many acts, both purporting to authorize and to ratify such bonds; and (2) the constitutional question was made and was before the court in the Wapello County Case, and in the numerous others hereinbefore mentioned; and the constitutional question was, as before shown, decided as late as the December term, 1868, in McClure v. Owen, 26 Iowa, 243.

It may therefore be confidently pronounced that from the decision of the Wapello County Case, in June, 1862, to the decision in McClure v. Owen [supra], in December, 1868, the doctrine of the supreme court of Iowa undeniably was, that the legislature could not authorize a public corporation to issue bonds to a private railway company in payment, or in return for stock subscribed therein, and levy a tax on the inhabitants or their property to pay the debt thereby incurred.

With this settled construction of the constitution in force, the legislature of the state passed the act of March 22, 1868 (Laws 1868, p. 54), entitled "An act to enable townships and incorporated towns and cities to aid in the construction of railroads." This act and that of 1870 are in substance identical, and has been so held very recently by the state supreme court. They provide that if a majority of the voters of any township, city, or town, shall, at an election, vote in favor of aiding in the construction of any railroad located as therein specified, a tax shall be levied, collectible as other taxes, not to exceed five per cent upon the assessed value of the property in the township, city, or town. This tax, when collected, forms no part of the public revenue, but is to be paid over to the railroad company, as a gratuity or bounty, to be used by it in aid of its undertaking, without any stock, or pecuniary or other compensation to the tax-payer being provided for or contemplated.

The validity of this law came before the supreme court of the state for decision in Hanson v. Vernon, 27 Iowa, 28, at the June term, 1869, and the court (Dillon, C. J., Wright, and Beck, JJ., concurring; Cole, J., dissenting), after full argument by a large number of the leading attorneys of the state, and mature consideration, held the act unconstitutional. It was then declared to be "absolutely impossible to hold the act of 1868

to be valid, and yet stand by the decision of the Wapello County Case (13 Iowa, 388), which was that the legislature could not, under any circumstances, pass an act which will make it lawful for a city, or county, in its corporate capacity, to subscribe stock to a railroad company. Id. 399, 400."

That is to say, the court had declared in the Wapello County Case and in numerous other cases, including McClure v. Owen [supra], decided as late as the December before, that it was the law of the state that under the constitution of the state, the people could not be taxed to aid in building railroads, though stock was received in return or payment for the aid rendered. If this was so, then the court was of opinion that it was clear that they could not be taxed and receive nothing in return.

Of the soundness of that decision I have no doubt. I do not here propose to restate the grounds on which it rests. I am well satisfied with it; the more so that it was cited with approval, and its doctrine followed soon after by the supreme court of Wisconsin, and by the supreme court of Michigan. It was made the basis of a veto of a similar law in California, and it was referred to in the constitutional convention of Illinois, and its principle adopted by the people of that state into their organic law.

The next step in this history is the re-enactment by the legislature of the state, on the 12th of April, 1870, of the act of 1868, which had the year before been pronounced, in Hanson v. Vernon [supra], to be unconstitutional. And in October, 1870, in Stewart v. Board of Sup'rs of Polk Co. [supra], the supreme court (Cole, C. J., Day and Miller, JJ., concurring; Beck, J., dissenting), pronounce the act of 1870 to be constitutional, overrule Hanson v. Vernon [supra], yet declare their adherence to the Wapello County Case, and the "whole series of decisions of the court holding invalid city and county bonds" issued to railway companies. Thus we have this anomalous result as the law of the state: It is not constitutional to tax the people to pay for the debt incurred to aid in building railroads where stock was received in return, but it is constitutional to tax them for this purpose where the tax is given as a gratuity to the railroad company, and nothing is received by the municipal corporation, or the tax-payer.

With great respect and deference to the learned judges of that court, I feel bound to say that such a result fails to secure the approval of my judgment. Under these circumstances the present application for an injunction is made to me as a judge of the United States circuit court for the district of Iowa; and the question presented to me is, What is my duty with respect to it? Is it my duty, as such a judge, to follow without examination into its soundness, the latest decision, because it is the latest? Or am I at liberty to look into the matter and follow the previous decisions, if I shall believe them to be

sound expositions of law? If the latter, I should have no hesitation, and should feel obliged to allow the injunction. Upon the best reflection I have been able to give the matter, I have failed to persuade myself that I would be justified in disregarding and refusing to follow the latest decision of the supreme court.

The question it will be observed, relates solely to the validity of the statute under the state constitution, and it is this law which the bill seeks to have nullified by the federal court. Now, where questions arising in the federal courts depend upon state statutes, these courts sit in the state to administer state laws, and these laws are expressly made rules of decision therein. Overruled decisions, how sound soever in principle, are nugatory in law. If the federal courts should follow overruled decisions because they believed them right, the result would be the intolerable mischief that would flow from the consequent confusion of rights, and the conflict of opinion leading to conflict of jurisdiction. A party would have a title in the one court and none in the other. Moreover, the federal courts might, by disregarding the adjudications of the state court, set up and support in the state a domestic policy repugnant to that recognized or established by the state court.

The mischief is irremediable, because these two courts, though sitting within the same jurisdiction and administering the same laws, have not, as in cases under the 25th section of the judiciary act, a common arbiter to compel uniformity of construction. The duty of the federal court to follow in such cases as the present, the latest decisions of the state court has been constantly asserted, and in some instances strikingly exemplified by the supreme court of the United States. Thus, that the court overruled two of its former decisions based on those of the state courts, and followed the latest decisions of the latter court. Green v. Neal, 6 Pet. [31 U. S.] 291. And see, also, U. S. v. Morrison, 4 Pet. [29 U. S.] 124, and cases cited by Miller, J.; [Gelpcke v. Dubuque] 1 Wall. [68 U. S.] 207 et seq. In Leffingwell v. Warren, 2 Black [67 U. S.] 599, it is observed: "The construction given to a state statute by the highest judicial tribunal of such state, is regarded as part of the statute, and is as binding upon the courts of the United States as the text. * * * If the highest judicial tribunal of the state adopt new views as to the proper construction of such a statute, and reverse its former decision, this court will follow the latest settled adjudication."

The only modification of this principle by the supreme court has been in cases from this state, where contracts were made and rights acquired under the former decisions, and where the court, under its power and duty, as it supposed, to protect contracts, has declined to follow the latter decisions as to prior contracts. Gelpcke Case, supra; Butz v. Muscatine, 8 Wall. [75 U. S.] 575. The modification of the rule thus declared is exceptional in its nature, and the case now made, involving no contract or other rights vested under the previous decisions, is not within the principle of the exception.

On the question of jurisdiction, I am inclined to think that while it may be true that different tax-payers may join in such a bill, yet, that as to each so entitled to join there must be in dispute an amount exceeding the sum or value of $500; in other words, where the interest of each is in its nature several, and the whole amount of tax demanded or demandable of each is less than that sum, so that neither one would have the right to bring the bill alone, the requisite amount to confer jurisdiction cannot be had by aggregating the several amounts of tax each is liable to pay. See Judiciary Act, § 11 [1 Stat. 78]; Adams v. Board of Com'rs [Case No. 52].

But as the application is disposed of on its merits, agreeably to the desire of counsel, I pass the question of jurisdiction without any more decided expression of opinion, since in any event the result would be to deny the injunction. Injunction denied.

[Federal courts follow state decisions and laws, except where in conflict with United States constitution and laws. Cited, Woodman v. Latimer, 2 Fed. 842; Henning v. U. S. Ins. Co., Case No. 6,366.]