| 19 | 395 |
| 131 | 547 |

CHAMBERLAIN *et al.* v. THE CITY OF BURLINGTON *et al.*

1. Towns and cities: FORMER RULINGS. The question as to the power of a city to bind a municipality by the execution and issuance of its bonds to aid in the construction of railroads, has never been discussed and directly decided by this court.

2. —— CASE CONSIDERED. The case of *Gelpcke* v. *The City of Dubuque*, 1 Wall., 205, considered and commented upon.

3. —— RAILROAD BONDS. Section 27 of the charter of the city of Burlington (ch. 54, Laws of the extra session of 1845), provided, that " whenever, in the opinion of the city council, it is expedient to borrow money for any *public purpose*, the question shall be submitted," &c. *Held:* That to aid in the construction of a railroad was not a *public purpose* within the meaning of the statute, and that it conferred no power upon the city to borrow money for that purpose.

4. —— POWER TO BORROW. The power to *borrow money* conferred upon a municipality, does not authorize the *loan of the credit* of the city.

5. —— NOTICE OF AUTHORITY. When bonds issued by a municipal corporation show upon their face the authority under which they are executed, and such authority is insufficient, they are void in the hands of any parties.

*Appeal from Des Moines District Court.*

MONDAY, JANUARY 8.

THIS is a suit in equity, brought by Elisha Chamberlain, and three other citizens of and property owners within the city of Burlington, Iowa, against the city of Burlington, and the mayor, alderman and treasurer, by their respective individual names, and as officers of said city.

The plaintiffs aver in the petition, that they are citizens and residents of the city of Burlington, and are each owners of real and personal property within the city, liable to taxation for city purposes, by the proper authorities of said city ; that on the 19th day of May, 1856, at a meeting thereof, the city council adopted a resolution, authorizing the mayor to call an election and submit to the electors thereof the question, whether or not the city should issue and lend to the Burlington and Missouri River Railroad Company, seventy-five thousand dollars in the bonds of said city, payable twenty years from date of issue, with interest at ten per cent per annum, payable semi-annually ; said loan to be secured by the first mortgage bonds of said company, upon the second section of their road; that on the 2d day of June, 1856, the election was duly held and said question was decided in the affirmative by the required number of votes specified by the 27th section of the charter of said city, approved June 10th, 1845, of which the following is a copy : ." § 27. That whenever, in the opinion of the city council, it is expedient to borrow money for any public purpose, the question shall be submitted to the citizens of Burlington ; the nature and object of the loan shall be stated, and a day fixed for the electors of the city to express their wishes; the like notice shall be given, as in cases of an election; the loan shall not be made unless two-thirds of all the votes polled at such election shall be given in the affirmative;" that on

the 23d day of June, 1856, the said council passed an ordinance, to authorize said loan, of which the following is a copy: "No. 44. An ordinance, to authorize a loan of city bonds to the Burlington and Missouri River Railroad Company, &c. Whereas, at a meeting of the city council of the city of Burlington, held on the 19th day of May, A. D. 1856, a resolution was adopted, authorizing the mayor of said city to call an election, and to submit the question whether or not the city issue and lend to the Burlington and Missouri River Railroad Company, seventy-five thousand dollars in the bonds of said city, said bonds made payable in twenty years from date of issue, and with an interest of ten per centum per annum, payable semi-annually, and said loan to be secured by the first mortgage bonds of said company, on the second section of the road of said company; and whereas, said election was duly and legally held on the 2d day of June, A. D. 1856, and said question was legally decided in favor of the same, whereby said loan is duly authorized to be made: Therefore be it ordained by the city council of the city of Burlington:

1st. That bonds of said city, to the extent of seventy-five thousand dollars, and in such amounts as the mayor may direct, bearing interest and payable as aforesaid, and duly signed, sealed and authenticated, and with coupons for interest, be issued by said city.

2d. That the mayor execute with the said company a contract of loan thereof, taking therefor the obligation of said company, and, as collateral security therefor, the mortgage aforesaid, and deliver said bonds to said company and receive said mortgage; that, on the 1st day of August, 1856, the mayor of said city executed and delivered to said railroad company seventy-five bonds, of one thousand dollars each, with coupons attached, as directed by said ordinance, of which the following is a copy:

"A."

"1856.    THE CITY OF BURLINGTON, IOWA.    1856.

"*Bond*, No. 50. *One thousand dollars, issued by the city of Burlington, under ordinance No.* 44: ' *To authorize a loan of city bonds, to the amount of seventy-five thousand dollars, to the Burlington and Missouri River Railroad Company.*'

"Twenty years after date, the city of Burlington, in the State of Iowa, promises to pay to bearer, at the office of E. W. Clark, Dodge & Co., in the city of New York, one thousand dollars for value received, without defalcation, with interest at the rate of eight per cent per annum, payable semi-annually at the same place, on the first days of August and February in each year, upon presentations of the coupons severally hereto annexed, until payment is well and truly made of the said principal sum of one thousand dollars.   In witness whereof, and in pursuance of ordinance No. 44 of said city, entitled "an ordinance to authorize a loan of city bonds to the amount of seventy-five thousand dollars, to the Burlington and Missouri River Railroad Company," the mayor of said city hereto sets his hand and causes the corporate seal of said city to be affixed, and the recorder of said city countersigns the same, at the city aforesaid, this first day of August, A. D. eighteen hundred and fifty-six.

                                 J. L. CORSE, *Mayor.*

D. J. SALES, *Recorder.*"

(There are forty coupons attached.)

— That said mayor and recorder claimed to issue said bonds and coupons under the authority conferred by said ordinance, No. 44; and the same are now outstanding against the said city ; that on the 24th day of July, 1865, the city council of said city adopted a resolution levying a tax of one-fourth of one per cent upon the real and personal property in said city, for the purpose of paying the interest on

the said bonds. That such tax has been levied and will become due on the 1st day of December, 1865; and delinquent on the 1st day of February, 1866; and all property liable to tax will be subject to sale therefor.

The plaintiffs then, in their petition, further aver, that the whole proceedings in relation to said bonds and tax were and are without authority and void; that the council had no authority to submit said question to an election; that the vote conferred no authority to issue the bonds; that the ordinance conferred none; that the mayor and recorder had no right, power or authority to issue said bonds, and they are wholly null and void; that the charter of said city, and the laws of the State of Iowa, do not authorize either the city authorities nor the citizens of said city to loan the credit of said city, nor its money, for any purpose; that said bonds, on their face, show an illegal purpose, and every purchaser thereof is chargeable with notice of their invalidity, and with notice that the mayor and recorder had no authority to issue said bonds; that said bonds refer to said ordinance, and said ordinance is printed on the back of each and every bond, and shows the issue of said bonds to be illegal.

It is further averred that the levy of said tax is illegal, and not authorized by the charter of said city, or the laws of the State of Iowa. That unless the treasurer is restrained by injunction, he will proceed to collect said tax, and plaintiffs will be compelled to pay the same or suffer a sale of their property.

The plaintiffs therefore ask that the defendants and their successors in office be perpetually and forever enjoined from collecting said tax, and from levying or collecting any tax for said purpose, or for the payment of the principal of said bonds, and for general relief, &c.

The defendants demurred to the petition because the same, with its exhibits, does not set forth sufficient facts to

constitute a cause of action; the same shows no reason why the relief should be granted; there is no equity in the petition.

The District Court overruled the demurrer, and the defendants electing to stand thereon, rendered judgment as prayed for in the petition. The defendants appeal.

*B. J. Hall* for the appellants.

*Charles H. Phelps* for the appellees.

COLE, J. — The charter of the city of Burlington was enacted and approved June 10th, 1845, and may be found in the "Laws of Iowa," passed at the extra session of 1845, ch. 54, p. 73. It is conceded by the respective counsel in this case, that if the city of Burlington had the authority to loan its credit, such authority is found in section 27, quoted *supra.* The charter is quite lengthy, and in view of the agreement of counsel, as to the clause upon which the authority is based, it is not necessary to set the charter out at length, especially, since upon an examination of it, we are agreed in the fact as conceded by counsel.

The question of the power of a *city* to bind the municipality by the execution and issuance of its bonds has

1. TOWNS AND CITIES: former rulings.

never been discussed and directly decided by this court; it is a new question in this State. *Sed vide Ten Eyck* v. *Mayor of City of Keokuk, infra.* And although Mr. Justice SWAYNE, in his opinion announcing the judgment of the United States Supreme Court in the case of

2. —— case considered.

*Gelpcke* v. *City of Dubuque*, 1 Wall., 205, claims to base the decision upon former adjudications of this court, yet an examination of the cases cited will show that none of them related to any city, nor did they involve the

questions of the power of a city to make and issue such bonds. All the cases cited related to the power or authority of a *county*, and even if *they* are or were (which is unanimously denied by this court) clothed with power and authority to make and issue the bonds in the given cases, it by no means follows that *city* governments were also clothed with the same power. Since each city government must rely upon the terms of its charter for its authority, and such charters (until the adoption of our new Constitution in 1857) were as variant as the cities themselves.

In this case we have no occasion, as supposed by counsel, to controvert (nor do we assent to) the correctness of the judgment in the case of *Gelpcke* v. *City of Dubuque;* and if this case involved the identical questions adjudicated in that, such adjudication would not, as claimed by counsel for defendant, have any binding or authoritative force or obligation upon this court, since it was not an appeal from this court, but relates to questions of that class upon which the State courts have the paramount or primary authority to adjudicate, and whose decisions are binding upon, and under the law and precedents should be followed by the Federal Court. Any attempt on the part of the Federal Court to invert this well recognized and settled order of superiority of judicial tribunals upon such questions, must tend, like any other disregard of law or rightful precedent, to confusion and anarchy.

The following cases determined by this court hold, that *counties* have no constitutional or legislative authority to bind themselves by the issuance of bonds for railroad stock. *The State of Iowa, ex rel. &c.* v. *The County of Wapello,* 13 Iowa, 388 ; *Myers* v. *The County of Johnson,* 14 Id., 47 ; *McMillan* v. *Boyles et al.,* 14 Id., 107 ; *Rock* v. *Wallace, County Judge, &c.,* 13 Id., 593 ; *Ten Eyck* v. *Mayor of City of Keokuk,* 15 Id., 486 ; *Smith* v. *Henry*

*County,* 15 Id., 385. In each of these cases the court was unanimous in its opinion; while in every case cited by Mr. Justice SWAYNE in the opinion referred to, there was upon that point a divided court. In view of these adjudications the thorough examinations given, and the unanimity of the court, it may well be declared, as in *Smith* v. *Henry County, supra,* that the question is settled so far as Iowa is concerned, whatever may be the course of decision by other tribunals of either independent or concurrent jurisdiction. There are, in this case, but two questions requiring our considerations: *First.* Whether the authorities of· the city of Burlington were clothed with any rightful power to issue the bonds mentioned in the petition, and *Second.* Whether such bonds can be enforced in the hands of third parties.

I. As to the first question, we have already seen, that if the power was conferred at all it was done by section 27 of the charter, to wit, "that whenever, in the opinion of the city council, it is expedient to borrow money for any public purpose, the question shall be submitted to the citizens of Burlington," &c. It will be observed, that this language confers authority to *borrow* money for any *public purpose.* The term "any public purpose" must, of course, be construed to mean any public purpose within the legitimate objects of the charter; that is, any public purpose which may be necessary for the execution of the corporate powers conferred.

The purpose must relate to, and be connected with, the objects of the incorporation, and it must be a *public* purpose, that is, relating to and concerning the public, as contradistinguished from one or more individuals or corporations.

The loaning of money to a citizen for the purpose of building a residence for himself would not be a *public* purpose; nor would the character of the purpose be changed

by the fact that such citizen was going to build a store, or a bank, or a hall with the money thus borrowed. The purpose would be individual, or private, although the citizen intended to make money for himself by the public use of the store, bank, or hall. Nor would the fact be changed, although the individuality borrowing the money should chance to be a corporation instead of a natural person, or that it was to be used for the establishment of a line of stages or cars, instead of a bank or hall, to be publicly used for the advancement of the private or corporate interests of the borrower. Mr. Webster says that "in *general, public* expresses something common to mankind at large, to a nation, state, city or town, and is opposed to PRIVATE, which denotes what belongs to an individual, to a family, to a company, or corporation."

Again, the power conferred was to *borrow* money. This power to *borrow*, might doubtless well be held to include the power to execute the obligation or security for repayment. But the difference between the execution of an obligation to repay money borrowed, and the *loan* of a promise or obligation to pay money at a future day, is too apparent to require or admit of argument to demonstrate or prove it.

We hence conclude that the power to borrow money for any public purpose, did not confer even the semblance of authority to loan the credit of the city to a corporation for its private or corporate purposes. The proposition is too plain, it seems to us, to admit of a doubt, and its bare statement conclusively repels all controversy.

II. Can such bonds be enforced in the hands of third parties? It will be remembered that the ordinance submitting the question to the electors of the city was so framed as to require them to vote whether the city would "issue and lend to the Burlington and Missouri River Railroad Company," &c. It was not whether

the city would borrow money for any purpose, but whether it would "issue and lend" seventy-five thousand dollars of the bonds of the city. And, also, that after the vote was had, the common council passed the ordinance requiring its mayor to "execute with the said company a *contract of loan.*" And, also, that the ordinance was entitled, "An ordinance to authorize a loan of city bonds," &c.; and that the ordinance was not only printed upon the back of the bonds, but the very face of the bonds themselves showed the same facts in express terms.

In view of these facts, it was clear, beyond reasonable doubt or possible controversy, that the bonds were issued without any authority or color of right, and this too was apparent upon the face as well as upon the back of the bonds. Any purchaser of the bonds must, therefore, have taken them charged with notice that they were issued without authority, and no person could, in any legal sense, become a good faith purchaser of them. The bonds are, therefore, vulnerable to the same defense in the hands of third parties, as in the hands of the original payee, the railroad company.

The officers of the city of Burlington were possessed of no power or authority, under any circumstances, to loan the credit of the city, and hence any obligation executed by them for such purpose, was wholly void and not enforceable in the hands of any person. Neither the question as to the constitutional right of the legislature to confer such power, nor the regularity of its exercise, are necessarily involved in this case. Nor are we required, as claimed by counsel, in order to determine this case, to decide whether, where a corporation has power under any circumstances to issue negotiable securities, the *bona fide* holder has a right to presume that they were issued under the circumstances which give the requisite authority, and hence that they are enforceable in the hands of such

holder, like other commercial paper, as has been held by the Supreme Court of the United States in *Commissioners of Knox County* v. *Aspinwall*, 21 How., 539, and followed in *Gelpcke* v. *City of Dubuque, supra*, and other cases *supra.*

But it is proper for us to remark that we do not recognize the correctness of the rule, as stated in those cases. There can be no reasonable question of its correctness, when applied and limited to private or trading corporations; but it certainly cannot be the correct rule as to counties and other *quasi* corporations or municipalities. The failure to observe the difference in principle between the two classes of corporations, doubtless led the court to declare, as a general rule for both, that which was alone applicable to the one class. This is apparent from the authorities cited by the court in 21 How., *supra*, which were cases relating to *private corporations.* The application of the rule to counties and other municipalities, has no support in principle nor in authority, aside from that single tribunal. But the determination of this case does not require, nor does our time and business permit, us to review the authorities or discuss the principle further.

The judgment of the District Court is

Affirmed.