| 107 | 409 |
| s 114 | 42 |
| 107 | 409 |
| 145 | 1582 |

## TOWNSHIP OF GRANT *v.* TOWNSHIP OF RENO.

1. DIVISION OF TOWNSHIP—APPORTIONMENT OF BONDED INDEBTED-NESS—STATUTE OF LIMITATIONS.

    Where territory is detached from one township and organized into another, the statute of limitations does not begin to run against the right of the old township to enforce the proportionate liability of the new upon bonds issued by the former township prior to the division, which are valid in the hands of *bona fide* holders only, until the liability of the old township thereon has been established by judgment.

2. SAME—SUIT FOR CONTRIBUTION—DEFENSES.

    It is no defense to a suit by the old township to compel the new to pay its proportion of a judgment so rendered, that the latter has not had its day in court upon the question of the validity of the bonds, since there is no method other than that pursued whereby such right could be afforded.

3. SAME—RIGHT TO MAINTAIN SUIT.

    Such suit is maintainable, under the statute,[1] upon the refusal of the new township to carry out an agreement whereby each township assumed its proportionate share of the bonded indebtedness of the original township.

4. SAME—CONCLUSIVENESS OF JUDGMENT—CONFLICT OF LAWS.

    A valid judgment rendered by a federal court against· the old township is conclusive upon the new township, if obtained without collusion or fraud, and the State courts will compel an apportionment of the liability thereunder, although such courts would not have rendered judgment upon the bonds in the first instance, because of the unconstitutionality of the statute authorizing their execution.

Appeal from Iosco; Simpson, J.   Submitted December 4, 1895.   Decided December 17, 1895.

Bill by the township of Grant against the township of Reno to compel the payment by the defendant of its proportion of a judgment rendered against complainant upon certain bonds issued prior to the creation of the

---

[1] See 1 How. Stat. § 795; 3 How. Stat. § 3109*h*.

defendant township from territory of complainant. From a decree dismissing the bill on demurrer, complainant appeals. Reversed.

The material facts set forth in the bill are that in 1885 the township of Reno was organized out of $147,425 (about two-thirds) in value of the territory of the township of Grant, valued at $227,885, as ascertained by the last assessment roll preceding the division; that upon such organization the township boards of the two townships met and mutually agreed that each of the townships should pay its share of the bonded indebtedness of the original township according to said assessed valuation; that by reason of said agreement the township of Reno became liable to pay its share; that at this joint meeting the two township clerks were appointed to ascertain the amount of such bonded indebtedness each township should so pay; that the clerks have since neglected or failed to act in the matter; that the joint meeting was adjourned *sine die* without ascertaining such amounts; that the township board of the township of Reno has ever since neglected and refused to meet with the township board of the township of Grant for the purpose of apportioning between said townships the said bonded indebtedness in the manner provided by law, or for the purpose of arriving at a settlement of the matters in difference, and that the same remain unsettled; that the township of Reno has never paid any part of said indebtedness, and has refused so to do, or to provide for the payment of the same or any part thereof; that, at the time of the division, the bonds, of which the township of Reno so agreed to pay its share, constituted an existing legal obligation of the original township; that the bonds and interest coupons thereto attached, of which copies are annexed to and made part of the bill, were issued by the township of Grant, under date of January 15, 1869, with a blank space for the insertion, by the

owner or holder thereof, of his name as payee; that the
said bonds and interest coupons were at various times
owned and sold by various holders thereof, until they
finally came into the hands of one Hauman G. Haugan,
who, as owner thereof, caused his name to be inserted
therein as payee; that said Haugan, on December 26,
1889, commenced suit in the United States circuit court
for the Eastern district of Michigan, against the com-
plainant township, on said bonds and interest coupons,
and that, upon due service of process, complainant town-
ship, with the knowledge and approval of the defendant
township, through its proper officers, appeared and de-
fended such suit, but unsuccessfully, so that on October
30, 1891, judgment was rendered therein upon said bonds
and interest coupons against complainant for $5,428.92
and costs, $58.37; that complainant paid on said judg-
ment November 8, 1892, $500, and May 7, 1894, $500; that
the balance of said judgment is due and unpaid, and said
Haugan threatens to apply to said court for a writ of
*mandamus* to compel complainant to pay said balance;
that said Haugan was a *bona fide* holder of said bonds and
interest coupons, for a valuable consideration, and a citi-
zen of Wisconsin, and entitled to bring said suit in the
said United States circuit court; that, according to the
decisions of the Supreme Court of this State, the act
under which said bonds and interest coupons were issued
is unconstitutional, and said bonds and interest coupons
are invalid, but according to the decisions of the Federal
Courts said act is constitutional, and said bonds and in-
terest coupons are valid; that complainant's liability,
and the consequent liability of defendant to pay its share
of said bonded indebtedness, according to its agreement,
was contingent upon the fact of the bonds being held by
one who, by reason of his adverse citizenship, was enti-
tled to bring suit thereon in said United States circuit
court; that, prior to the commencement of said suit by
Haugan, complainant, with the knowledge and approval

of defendant, through its proper officers, made various and unsuccessful attempts to ascertain who was the owner of said bonds, and whether complainant was liable to pay the same; that, until the time of commencement of said suit by said Haugan, neither complainant nor defendant could ascertain who was the owner of said bonds, nor until judgment therein, whether said Haugan was a *bona fide* holder of said bonds for a valuable consideration, and a citizen of Wisconsin, so as to give said United States circuit court jurisdiction.

The defendant interposed a demurrer, a plea, and answer. The grounds of the demurrer are:

(1) That the bonds are void under the decisions of this court, and that this court will not lend its aid to the enforcement of a demand which is in violation of the fundamental law of the State.

(2) That the defendant has not had its day in court as to said bonds or other claim mentioned in the bill.

(3) That it does not appear by the bill that the complainant has taken any of the steps required by law to authorize complainant to maintain this suit.

The plea sets up the statute of limitations. The answer admits the organization of the defendant out of the territory of the township of Grant, and, as to the other allegations, leaves complainant to its proof. The demurrer was sustained, and bill dismissed.

*Barbour & Rexford*, for complainant.

*O. E. M'Cutcheon*, for defendant.

GRANT, J. (*after stating the facts*). 1. The claim of the complainant is not barred, either by laches or the statute of limitations. These bonds were issued in January, 1869, before the decision was rendered in *People* v. *Tp. Board of Salem*, 20 Mich. 452, May 26, 1870. Under that decision these bonds were void, and their payment could not be enforced in the courts of this State, unless they showed upon their face the authority of the township to

issue them, and were in the hands of a *bona fide* holder
without notice. The bonds were payable 15 years from
date. The township of Grant was, therefore, not liable
until its liability was established by the judgment of a
court of competent jurisdiction. Presumably, the officers
and people of both these townships so understood the
situation. There was, therefore, no necessity for proceed-
ing or right to proceed to ascertain the amount of the
bonds chargeable to each township until the liability of
the township of Grant therefor was established by the
judgment of such court. If the township of Grant had
commenced suit against the township of Reno for its pro-
portion of these bonds, according to the agreement of
the two boards, it would have been a sufficient answer
that the bonds were void under the decision in the Salem
case, and there was no certainty that the former would
or could be held liable for them. According to the alle-
gations of the bill, its liability was established in October,
1891, and within three years after that this suit was
commenced.

2. It is urged that this suit cannot be maintained be-
cause the judgment in the United States court is not
conclusive, and the defendant has not had its day in
court upon the question of the validity of these bonds.
The obvious reply to this is that the only method pro-
vided by law whereby the defendant could have its day in
court is the one here pursued. The bondholder could
not sue the township of Reno, but only the township of
Grant, his promisor. The effect of this judgment will
hereinafter be considered.

3. We think the steps taken by the complainant afford
sufficient basis for the maintenance of the suit. The
boards of the two townships had met and settled all
their claims and rights of property, each against the
other, and solemnly agreed upon the proper division of
these bonds, and provided for an accounting. The agree-
ment was binding upon the two townships, and either

could enforce it in the courts upon the refusal of the other to carry it out.

4. The principal question in the case is whether the defendant can be held liable at all, for the reason that such bonds have been held void under the decisions of this court. The United States courts held that the decision in the Salem case was not binding upon them in cases where such bonds were issued and received in good faith prior to that decision. *Township of Pine Grove* v. *Talcott*, 19 Wall. 666; *Taylor* v. *Ypsilanti*, 105 U. S. 60. Where, however, such bonds show upon their face lack of authority to issue them, or refer to ordinances or charters as the foundation thereof, the owners cannot be protected on the ground of their *bona fides*, but take at their risk. *Risley* v. *Village of Howell*, 57 Fed. 544; *Bogart* v. *Township of Lamotte*, 79 Mich. 294. Where such bonds show a *prima facie* authority upon their face, they are good in the hands of a *bona fide* purchaser without notice of the real object for which they were issued. *Common Council of Cedar Springs* v. *Schlich*, 81 Mich. 405. The case of *Haugan* v. *Township of Grant* does not appear to be reported, and we are, therefore, not informed of the basis of the judgment. For the purposes of this suit, however, we must assume, under the allegations of the bill, that it is a valid judgment, conclusive upon the township of Grant. Is it, if valid, conclusive upon the township of Reno? At the time the bonds were issued the two townships were one. The people acted upon the faith of the validity of an act of the legislature. The people of both townships were equally responsible for the issue of the bonds. The defendant is not in a position to throw stones at the complainant. Both occupy the same glass house, erected by their joint action. If the complainant can upon any legal grounds be held liable in a court of competent jurisdiction, there is certainly no justice or equity in permitting the defendant to escape its fair share of the burden. Especially is this

so if the allegations of the bill are true that the defend-ant was notified of the pendency of that suit, and it was defended with its knowledge and assent.

Defendant's counsel relies upon *Township of Pierson* v. *Township of Reynolds*, 49 Mich. 224, and *Hale* v. *Township Board of Baldwin*, 49 Mich. 270. *Township of Pierson* v. *Township of Reynolds* was decided, apparently, upon the ground that the transaction upon which the court rendered judgment as a binding agreement was subsequent in date to the organization of the defendant township, and, even if valid, could not bind the latter township. The township of Pierson asked for the writ of *mandamus* —a discretionary writ—to compel the two townships to apportion the liability. In *Hale* v. *Township Board of Baldwin* the same writ was invoked for a like purpose. The court held that, upon the face of the petition, it appeared that the bonds were not negotiated and held by *bona fide* holders, and the court therefore refused the discretionary writ of *mandamus* to compel an apportion-ment.

These cases are not similar in their facts, nor con-clusive in the present case. The defendant may be able, upon a hearing, to show some grounds for attacking that judgment, or to show why it is not bound by it. The fact that the courts of this State would not have rendered judgment against the complainant is no reason why they will not compel an apportionment of the judg-ment in another court of competent jurisdiction. In the case of *City of Port Huron* v. *McCall*, 46 Mich. 565, this court refused to hold void bonds which were issued to pay judgments against the city in both the State and Federal courts upon similar void bonds. If the judgment was valid, and was not obtained by collusion or fraud, we see no reason, in justice and in equity, why the defendant, equally responsible with complainant, should not be held to pay its share of the burden, and why that judgment is not conclusive upon it. We think the bill

of complaint presents a *prima facie* case for hearing upon pleadings and proofs.

The decree will therefore be reversed, with costs of both courts, and the case remanded for further proceedings in accordance with this decision.

The other Justices concurred.