PACIFIC IMP. CO. v. CITY OF CLARKSDALE.

(Circuit Court of Appeals, Fifth Circuit. February 17, 1896.)

No. 412.

1. MUNICIPAL CORPORATIONS—ISSUE OF BONDS—QUALIFIED VOTERS—MISSISSIPPI CONSTITUTION OF 1869.

The constitution of Mississippi of 1869 provided that the votes of two-thirds of the qualified voters of a city or town should be required to authorize a subscription by the city or town to the stock of a railroad company. An act of the legislature regulating such subscriptions provided that on the day of an election to authorize a subscription a new registration of voters should be had, which should be conclusive evidence of the true number of legal voters, and that no person not registered should vote, or be counted in determining the result. *Held*, that such provisions in regard to registration did not violate the constitutional provision requiring the assent of two-thirds of the qualified voters.

2. SAME—REINCORPORATION—OBLIGATIONS.

After a town had adopted an ordinance providing for an issue of bonds to pay for a subscription to the stock of a railroad company, and the same had been approved by the qualified voters according to the statutes of Mississippi, but before the bonds were issued, the charter of the town was repealed, and shortly afterwards the same constituency was incorporated as a city. *Held*, that the law thereupon imposed upon the city the obligation to discharge the outstanding debt or obligation of the town to pay for the subscription to the stock, which might be discharged by the issue of bonds, if accepted by the creditor, though the city had no power to make such bonds negotiable, and that the constitution of Mississippi of 1890, in view of the saving clause contained in its prohibition of such subscriptions, did not invalidate a subscription made before its adoption, though no bonds had been issued at the time of such adoption.

3. SAME—NEGOTIABLE BONDS—EVIDENCE OF DEBT.

If a municipal corporation not authorized to issue negotiable bonds does issue bonds, negotiable in form, in payment of a debt, recovery may nevertheless be had upon such bonds, as evidences of debt, though they are subject even in the hands of third parties, to equitable defenses.

In Error to the Circuit Court of the United States for the Northern District of Mississippi.

Holmes Cummins and D. A. Scott, for plaintiff in error.
J. W. Cutrer and J. L. Alcorn, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and BOAR-MAN, District Judge.

BOARMAN, District Judge. This suit was instituted in the circuit court for the Northern district of Mississippi by the Pacific Improvement Company, against the municipality of the city of Clarksdale, to recover on 43 past-due coupons issued by the defendant corporation, January, 1891, each for the sum of $60. Plaintiff alleges that such coupons were issued to secure the interest to become due on certain 15 (part of an issue of 25 bonds, of $1,000 each) bonds, of $1,000 each, issued by the defendant, under the authority of the act of the state of Mississippi, of February 15, 1882, entitled "An act to authorize counties, cities and towns to subscribe to the capital stock of railroads," approved March 7, 1882; that the plaintiff purchased the said 15 bonds, numbered from 11 to 25, inclusive, with coupons attached, in due course of trade. The evidence attached to the bills of exception seems to be all the testimony administered by either side on the trial, and it shows substantially that on the 25th day of February, 1882, the legislature of Mississippi passed an act empowering the several cities and corporate towns of the state to subscribe to the capital stock of railroad companies, payable in negotiable coupon bonds of the city or town so subscribing, on the approval of two-thirds of the qualified voters of the corporation. Under the authority of that act the town of Clarksdale on the 30th day of October, 1889, adopted an ordinance providing for the subscription by the said town of $25,000 to the stock of the L. & N. Ry. Co., payable in 25 negotiable coupon bonds, of $1,000 each, of the said town, running 20 years, with 6 per cent. interest; and the said ordinance, having been submitted on the 25th of November, 1889, was approved and ratified by the voters of the said town of Clarksdale, the vote thereof being unanimous. By the terms of said ordinance, it was stipulated that no payment was to be made, or the bonds to be issued, until the branch road had been constructed beyond the county line. That there was no stipulation as to any fixed time in which the said railway work was to be completed, and that said railway was completed about September, 1890. That in the meantime, on February 13, 1890, the legislature passed an act repealing the act of February 25, 1882, incorporating the town of Clarksdale, and then, a few days later, passed another act, incorporating the defendant the city of Clarksdale, in which is included, so far as we are advised by the record, substantially, the same territory and people that were included in the old town of Clarksdale. After the completion of the said railroad, some time in the latter part of 1890, the defendant the city of Clarksdale, as successor to the town of Clarksdale, prepared and executed 25 bonds, of $1,000 each, payable at 20 years from date, with coupons attached, with a yearly interest of 6 per cent. And in pursuance of an ordinance passed by the city of Clarksdale the said bonds, etc., were placed in

the hands of the Clarksdale Bank & Trust Company, and they were to be delivered to the railway company upon the delivery to the bank of said certificates of stock for the like amount of shares of said railway stock. These deliveries were accomplished on the 13th of May, 1891. The defendant, under its plea of the general issue, set up a number of special matters, an analysis of which seems to show substantially the following grounds of defense: That the act of 1882, under which the election to authorize the issuance of the bonds in controversy purports to have been held, is unconstitutional, in the fact that it provided for and set up unreasonable regulations with reference to the registration of voters in said town; that the act was not uniform and impartial, and directly denied and abridged the constitutional right of the qualified electors of the town; "that the subscription originally proposed or made, if any such was ever authorized, was conditional only, and the subscription provided for by the Louisville, New Orleans & Texas Railway Company was never accepted;" that in that state of case, before the performance of the condition precedent upon which only could the subscription become binding, the constitution of Mississippi of 1890 was adopted, which deprived all municipalities of the right to subscribe to the capital stock of railway companies, and before that time, also, the charter of the municipality under which the election had been held was repealed, and the bonds, to which were attached the coupons in controversy, were issued by a new municipality, to wit, the city of Clarksdale, subsequently created by the legislature of Mississippi, and which latter municipality had no authority to issue the bonds referred to; that "conceding the subscription was not conditional, and the obligation to subscribe and pay for the stock attached coincident with the determination of the result of the election held by the town of Clarksdale, the bonds issued by the defendant are void, notwithstanding, for want of legislative authority"; that the original ordinance of the town of Clarksdale required the city secretary to affix the corporate seal to said bonds, while in fact the seal of said corporation was not impressed upon the said bonds by said secretary, nor by any one authorized to do so.

After all the evidence was in, the court below directed the jury to find for the defendant. The several assignments of error presented by defendant in error are all based on the error of the court below in so directing the verdict, and they allege, substantially, that there was error therein because the proof in this case shows that the town of Clarksdale, the immediate predecessor of the defendant corporation, was fully authorized, in law, to enter into the subscription contract with the railway company, and to obligate itself to pay the amount so subscribed, in negotiable bonds, according to said contract; that when the town of Clarksdale was dissolved the debt incurred by such said subscription, and the obligation to issue such bonds therefor, remained undischarged, and that there was, in law, a valid obligation resting on the constituency of the dissolved municipality to discharge the same; that, when the legislature incorporated the said constituency into the said the city of Clarksdale, the law itself imposed such said obligation on the new municipality;

that the work of the railway company having been contracted for by the town of Clarksdale during the life of that corporation, and the same having been completed after the creation of its successor, the city of Clarksdale, the defendant, in recognition of its right and duty, under the provisions of the constitution of 1890, to meet and discharge such lawful obligations of the dissolved town of Clarksdale, as were imposed on it by law, issued the said bonds lawfully now sued on.

The act of 1882, under which the election authorizing the said subscription was held, provides for a new registration to be had, on the day of the election, of all the legal voters, etc.; that the registration thus made shall be conclusive evidence, in all matters affecting the validity of the vote, in all courts of this state, of the true numbers of legal voters, and no person not so registered shall vote, or be counted in determining the result; that the subscription shall not be made "unless it appears from the returns made by said inspectors of election and registration books that two-thirds of the legal voters of such county, city or town have voted for the subscription." The evidence in the transcript shows that the whole number of voters "so registered by said inspectors, and of votes cast at said election, was 168; that all of those were cast for, and none against, the said subscription." The evidence in the record shows nothing as to the number of persons residing in said town who were qualified, under the law or constitution, to vote at a general election, nor how many voters were, or had been previously, registered in the town. The counsel's argument against the constitutionality act of 1882 seems to be founded on an assumed condition of facts. We can see nothing in the evidence, upon which we think good or conclusive reasoning could be founded, forbidding the legislature, under its constitutional power, to provide for such registration as was had at the said election, or to show that the registration so had was damaging at all, to the rights of any tax-paying resident of said town who was qualified, under the law or constitution, to vote at a general election. So far as we know, every qualified elector in the town was at liberty to vote, and may have voted, his assent or dissent on the issue submitted at that election. In Hawkins v. Carroll Co., 56 Miss. 735,—cited by counsel for plaintiff in error for the purpose of showing the rule in Mississippi to be that two-thirds of all the qualified legal voters of the county, city, or town must assent to the subscription before the debt can be lawfully imposed on the constituency thereof,—appears an agreed statement of facts showing, among other things, that there were at the time of the election from 2,000 to 2,500 qualified voters in Carroll county. On the state of facts submitted, the court said that "the proposition did not have half of 2,000 voters, and, of course, did not have the assent of two-thirds, as required by the constitution." The evidence in that suit showed a state of case to which the court's view or rule of law laid down thereon could be applied. In this case how can any one say, from the evidence, that less than two-thirds of all the qualified electors, under the constitution and law, residing in said town, did not express their assent to the subscription? The bonds sued on in the

Hawkins v. Carroll Co. suit were issued under the authority given to counties to subscribe to railways, in the constitution of 1869, which contained the "two-thirds clause." After the rule in Mississippi, interpreting that clause, was announced, in 1874, the legislature, we presume, in passing the act of 1882, desired, in the provisions therein for new registration, and in its declaration that the registration thus made shall be conclusive evidence in all matters affecting the validity of the vote, etc., to present its view of the meaning of that two-thirds clause. So far as we are advised, the courts of Mississippi have not said that the provisions of that act in relation to the methods for registration, etc., described therein, are unconstitutional, though it may be that the said courts have, since the act of 1882, held to and affirmed the said rule of the supreme court in relation to the two-thirds clause in the said act. In Carroll Co. v. Smith, 111 U. S. 556, 4 Sup. Ct. 539, a suit brought on bonds, also issued under the two-thirds clause in the constitution of Mississippi, against that county, the defenses against which were like those set up by the defendant city in this case, the court found it necessary to consider and pass upon the rule laid down in the supreme court of Mississippi in Hawkins v. Carroll Co. In the case of Carroll Co. v. Smith the court said:

"The single question for us to consider in this case is whether it requires a vote of two-thirds of the whole number enrolled as qualified to vote, and not merely two-thirds of such actually voting, at an election for that purpose, to authorize the issue of such bonds as those in the suit."

In further discussing the opinion of the supreme court of Mississippi, in which the rule contended for by appellee's counsel was laid down, the court said:

"We have, however, considered the reasoning of the supreme court of Mississippi in its opinion in the case of Hawkins v. Carroll Co. with the respect which is due to the highest tribunal of the state, speaking upon a topic as to which it is presumed to have peculiar fitness for correct decision; and, while we are bound to admit the carefulness and fullness of its examination in question, we are not bound to adopt its conclusions. On the contrary, we are constrained to follow the decisions in St. Joseph Tp. v. Rogers, 16 Wall. 644, and adhere to the views expressed by this court in County of Cass v. Johnston, 95 U. S. 360, in deciding the same question upon the construction of a provision of the constitution of Missouri which is identical with that of the constitution of Mississippi under consideration. It was there declared and decided that all qualified voters who absented themselves from an election duly called are presumed to assent to the expressed will of the majority of those voting, unless the law providing for the election otherwise declares. Any other rule would be productive of the greatest inconvenience, and ought not to be adopted unless the legislative will to that effect is clearly expressed. In Missouri, as in Mississippi, there was a constitutional provision requiring a registration of qualified voters. State v. Sutterfield, 54 Mo. 391."

In concluding its opinion the court said:

"In our opinion, the constitution of Mississippi did not mean, in the clause under consideration, to introduce any new rule. * * * That the words 'qualified voters,' as used in the constitution, must be taken to mean, not those qualified and entitled to vote, but those qualified and actually voting."

In our view of the law, we see no reason that would forbid the town of Clarksdale, if it had been in existence when the railway work was completed, to issue negotiable bonds in compliance with

the said subscription contract between itself and the railway company. When the town of Clarksdale was dissolved, and the municipality of the city of Clarksdale was incorporated, for the same constituency that had previously been incorporated in the town of Clarksdale, we think the law, without any further or special legislative authority, imposed on defendant city therefor the obligation to discharge the lawful outstanding and unsatisfied debts of the town of Clarksdale. What was that debt or obligation? It was to give negotiable bonds, evidences of indebtedness, bearing 6 per cent., running 20 years, in payment of the amount of the said subscription. See Broughton v. Pensacola, 93 U. S. 266; Mt. Pleasant v. Beckwith, 100 U. S. 514; and Mobile v. U. S., 116 U. S. 289, 6 Sup. Ct. 398.

Counsel for defendant city contends that, even if said obligation of the dissolved corporation was lawfully imposed on the defendant corporation, the limit of its liability therefor is to pay the debt for the subscription to the said railway company; that the law imposing such an obligation does not authorize it to issue its negotiable bonds therefor; that there is no authority expressed or implied in the law, or in the charter of the defendant corporation, to authorize it to bind its constituency for the payment of such securities. We find that the undisputed evidence, and the law applicable thereto, show that the debt of the dissolved corporation was lawfully incurred for said railway subscription; that defendant city, on its creation, February 15, 1890, as the successor of said dissolved corporation, became liable for the satisfaction of said debt to the said railway company, to whom the bonds herein were issued by defendant city January, 1891. We find, too, that defendant city received, and now owns and holds, said stock; that said bonds were signed by the mayor of defendant city, and they were, in pursuance of valid ordinances, delivered to the said railway company in payment or settlement of the debt due by the town of Clarksdale to said railway company; that plaintiff is the holder and owner of the bonds sued on. Conceding that the limit of the liability of the defendant city, the successor of the dissolved corporation, at the time it undertook to issue the negotiable bonds now sued on, was only, in law and fact, to pay the said debt of the town of Clarksdale, and that it possessed only such powers as ordinarily inhere in the organism of such municipalities, it seems, if the creditor of such a corporation was satisfied, that there could be no reason, in law, to forbid such a corporation to issue to such a creditor a promissory obligation that, as an evidence of such debt, would be lawfully binding on its constituency. The power to contract such a debt, on the part of such a corporation, carries with it the authority to give valid evidences of debt, such as warrants, vouchers, or promises to pay the debt. Why cannot a debt imposed on such a corporation be settled by a promissory bond or note binding on its constituency? If we were not otherwise satisfied of the power of the defendant corporation to give negotiable bonds in settlement of the debt of its predecessor, we think it is clear, whatever may be the extent of defendant's charter powers to issue such

bonds in settlement of its lawful debts, that recovery may be had against the defendant under the purpose and stipulations in the following provisions of the constitution of 1890, namely:

"No county, city, town or other municipal corporation shall hereafter become a subscriber to the capital stock of any railroad, or other corporation or association, or make appropriations, or loan its credit in aid of such corporation or association; all authority that heretofore conferred for any purpose aforesaid, by the legislature, or by the charter of any corporation is hereby repealed." "Nothing in this section contained shall affect the right of any corporation, municipality or county to make such subscriptions, where the same had been authorized under laws existing at the time of the adoption of this constitution, and by vote of the people thereof, had prior to its adoption, when the terms of its payment and subscription had been, or shall be complied with, or to prevent the renewal of bonds, or other use of any said other means as are or may be prescribed by law for the payment or liquidation of such subscription or of any existing indebtedness." Const. 1890, § 183.

Under the view we have expressed, the debt or obligation due to the railway company at the time the settlement was made between the defendant and the railway company was still outstanding, and it was clearly the duty and right of the defendant city to use such means in liquidation thereof as might be lawful in the discharge of any of its existing indebtedness. It was lawful, in the defendant, in settlement of its existing indebtedness, to give its promissory obligation to pay on such terms as the creditor might be willing to make. Conceding there was no power in the defendant to bind its constituency to the payment of commercial securities, as these bonds purport to be, it does not follow that—when such bonds were given in payment of a lawful debt, and the settlement of such debt is shown to have been the purpose for which the bonds were issued, and it is further shown that the mayor, being duly authorized by valid ordinances, signed and delivered the same to the creditor agreeing to take them—the defendant can escape the payment of the debt or obligation which is evidenced by such promises to pay, because, or on the ground that, the city authorities gave negotiable, instead of nonnegotiable, promises to pay to the creditor. On the contrary, when negotiable securities, instead of nonnegotiable instruments, have been employed in settlement of lawful debts, the negotiable bonds so given have, when they were being sued upon, been treated, in a number of reported cases both in federal and state courts, as evidences of the debt, and on them, in the hands of third parties, recovery has been had against such defendant corporation. See Holmes v. City of Shreveport, 31 Fed. 113, and cases cited therein.

There seems to have been no contention in the court below that the plaintiff was not the holder, for value, of the instruments sued on. The defendant city's contention on that matter went only to the purpose of denying that the instruments in plaintiff's hands could be recovered on as commercial securities. Yet there appears to have been no purpose, so far as we are advised by the record, on the part of defendant city, in the court below, to set up any equitable defenses against the bonds sued on. In Claiborne Co. v. Brooks, 111 U. S. 408, 4 Sup. Ct. 489, suit was brought on negotiable

bonds in the hands of a holder for value. A debt had been contracted in favor of Sturm, a building contractor, to whom the bonds were given in payment thereof. The suit was resisted because "the county had no authority to issue a negotiable, interest bearing bond," such as sued on. The real controversy brought to the supreme court seems to have been based on an exception to the ruling of the court below forbidding defendant county to set up equities against the bonds. The court said:

"If the right of the defendant to set up the defenses which it had against the bonds in the hands of Sturm was not denied or disputed, we do not see of what importance the particular form of the instrument would have been."

In concluding the opinion the court further said:

"* * * There was no power in the county to issue such commercial paper as would be exempted from such defense. The document sued on in this case may very well have served the purpose of a voucher to show a stated account, as between Sturm and the county, and may be of such a form as to be assignable by indorsement; but it must always be liable, in whosesoever hands it may come, to be open for examination as to its validity, honesty, and correctness."

Under our view of the law applicable to the issuable facts in this case, it follows that it was error in the circuit court to direct a verdict for the defendant city. The judgment is reversed, and the cause remanded, with directions to grant a new trial.