JOHN P. SWANSON, Appellee, v THE CITY OF OTTUMWA, et al., MAYOR AND ALDERMEN OF SAID CITY, Appellees; THOMAS LAMBERT AND THE NATIONAL LIFE INSURANCE CO., OF MONTPIELER, VERMONT, Appellants.

**Cities and towns: RAILROAD AID: BONDS: VALIDITY.** While Chapter 133, Acts of the Nineteenth General Assembly empowered a city to purchase land for a donation to a railway company for depot grounds, it failed to provide for the creation of a fund to pay therefor and hence it had no power to issue negotiable bonds on that account, but was limited to the issue of warrants, or other non-negotiable paper, payable out of its general or contingent funds.

**Same.** The fact that a city was authorized to refund its indebtedness and that it could have issued warrants rather than negotiable bonds in aid of a railway company did not validate the bonds which had never been refunded.

**Municipal bonds:** RECOVERY UPON. Where negotiable municipal bonds are issued without authority they are void and no recovery can be had thereon as non-negotiable instruments.

**Constitutional law:** CHANGE OF JUDICIAL DECISION: IMPAIRMENT OF CONTRACTS. A change of judicial decision is not the promulgation of a new law and is not within the constitutional provision prohibiting the impairment of contract obligations.

**Void municipal bonds:** QUANTUM MERUIT. A purchaser of municipal bonds which are void for want of statutory authority to issue them is charged with notice of their invalidity and cannot recover on the *quantum meruit.*

*Appeal from Wapello District Court.*— HON. F. W. EICHELBERGER and M. A. ROBERTS, Judges.

SATURDAY, FEBRUARY 10, 1906.

REHEARING DENIED THURSDAY, SEPTEMBER 27, 1906.

SUIT in equity to enjoin the defendant city, its officers and agents, from paying certain bonds or the interest coupons therein, or from appropriating any money for the payment thereof. Defendants Lambert and the National Life Insurance Company, holders of said bonds, were made parties, and as to them the relief asked was that they be enjoined from presenting the same, from demanding or receiving anything from the city thereon, and that the bonds and coupons thereto attached be canceled. The city and its officers appeared, confessed the allegations of the petition, and joined with plaintiff in his prayer. The holders of the bonds also appeared, admitted their purchase of the bonds from the Chicago, Ft. Madison & Des Moines Railroad Company, and pleaded that they purchased the same in good faith, before maturity, and without knowledge of any defenses thereto. They each pleaded the

validity of the said bonds, and, in cross-petitions, asked judgment for the amount due thereon, and further asked that, in the event the bonds were held invalid, they have judgment against the city for the amount they paid the railroad company for said bonds as for money had and received for its use and benefit. Plaintiff and the city each demurred to the answer and cross-petitions of the bondholders, and these demurrers were sustained; and, the bondholders electing to stand on their pleadings, decree was entered against them as prayed in plaintiff's petition. Lambert and the National Life Insurance Company appeal. *Affirmed.*

*Fred A. Howland, Dillon & Hubbard,* and *Lane & Waterman,* for appellant National Life Ins. Co. *Baker & Ball,* for appellant Lambert.

*Mitchell & Hunter,* for appellee Swanson. *M. C. Gilmore,* for appellee city.

DEEMER, J.—From the pleadings we extract the following facts, which are deemed material to a proper determination of the case:

In the year 1893, the Chicago, Ft. Madison & Des Moines Railroad Company, an Iowa corporation, had built and was operating a line of railroad from Ft. Madison to the city of Ottumwa. The city was desirous of making a donation to this company of a site for depot grounds, machine shops, etc., under chapter 133, Acts 19th Gen. Assem. The railway company had already selected grounds for these purposes at a much lower price than the city was able to do, and so it proposed to issue bonds directly to the company for the amount it had agreed to pay for the property it desired within the city limits, to wit, the sum of $34,000; said bonds to be delivered when the railroad company secured absolute title in fee to the land desired by it. A proposition of this kind was submitted to the electors at a special elec-

tion, and was carried.  Thereupon in due course the city executed and delivered to the railroad company $34,000 in negotiable bonds in denominations of $1,000 each, with interest coupons attached.  The bonds were issued and delivered to the railroad company June 8, 1893.  Ten of them fell due February 20, 1904, ten on February 20, 1905, and the remaining fourteen on February 20, 1906.  These bonds bore interest at the rate of 5 per cent., payable semiannually. After receiving these bonds, the railway company negotiated them before maturity, selling thirty-two of them to the National Life Insurance Company and one to Lambert.  The ownership of the other is not disclosed.  The bondholders claim that these bonds were regularly and properly issued, that they are good-faith holders thereof before maturity, and that in any event they are entitled to judgment against the city for the amount they paid for the bonds.  On the other hand, plaintiff and the city contend that the city had no power to issue negotiable bonds for the purpose of raising money for the purchase of real estate to be donated to a railway company, that in no event could it issue negotiable bonds, that such bonds were and are void, that no action in any form can be based thereon, and that there can be no recovery on the common counts, for the reason that the city has received no benefit from the money advanced by the bondholders.  Some other incidental claims are made, which will be noticed as we proceed.

The authority for donating land or bonds to a railway company is found in chapter 133, Acts 19th General Assembly, which reads as follows:

Section 1.  That it shall be lawful for any incorporated town or city to procure for the purpose of donation, and to donate to any railway company owning a line of railway in operation or in process of construction in such incorporated town or city, sufficient land for depot grounds, engine houses, and machine shops for the construction and repair of engines, cars and other machinery necessary to

the convenient use and operation of said railroad. Before such donation shall be made or appropriation of funds to procure land for such purpose, a petition shall be presented to the trustees or council of such town or city, asking that such donation be made, and limiting the sum to be appropriated for that purpose. Upon the presentation of such petition a special election of said city or town shall be called. On the ballots used at such an election shall be printed the words " For the donation " and " Against the donation," and if two-thirds majority of the qualified electors voting at such election shall vote for the donation, said trustees or council shall determine the site to be donated designating the boundaries thereof, and the amount to be appropriated in procuring said site, not exceeding the amount named in the said petition; and may in the name of such incorporated town or city procure said land by purchase or by payment of the estimated damages in case said land or any part thereof shall be taken in the name of such railway company by process of condemnation for railway purposes, and may also vacate any streets and alleys within the boundaries of said site and may prescribe the terms and conditions and limitations upon which such grant shall be made, which shall be binding upon the railway company accepting such donation: Provided, etc.

It will be noticed, first, that the city did not directly procure any land for the purpose of donating the same to a railway company, nor did it in fact make any such donation. On the contrary, it issued, delivered, and donated its negotiable bonds to the railway company. Further, it will be observed that the statute we have quoted authorizes cities to procure for the purpose of donating and to donate sufficient land, etc., and that before any donation shall be made or any appropriation of funds determined upon, a petition shall be presented asking that such donation be made, and limiting the sum to be appropriated for that purpose. And in the event of the required majority being cast in favor of the donation, the city may procure the land by purchase or by payment of the estimated damages in the event condemnation is made. For present purposes we shall assume that the city had power

to issue some form of obligation directly to the railway company in lieu of the donation of land, and our first inquiry shall be as to the authority of the city to incur any sort of indebtedness in procuring a site for depot grounds, etc., and second, as to the nature of the obligations it may issue.

As no authority is expressed by this statute or elsewhere for any additional tax to meet any obligations which may be incurred for depot sites, and no authority is given to issue negotiable bonds therefor, there is much reason for saying that land so procured by a city must be paid for out of its general funds, and that, as cities are now supposed to be on practically a cash basis, they cannot issue any form of indebtedness in excess of their current revenues. This last proposition, however, is not argued with much force, and is of so much doubt that we do not, at this time, make any pronouncement thereon. But as there is no provision whatever whereby the city is authorized to levy any tax for the purpose of meeting any indebtedness it may incur in procuring a depot site, and no special fund is created whereby to pay its indebtedness, it must follow that it has no express power to do more than issue warrants payable out of its general or incidental funds. *Morell v. Monticello,* 138 U. S. 673 (11 Sup. Ct. 441, 34 L. Ed. 1069) ; *Police Jury v. Britton,* 15 Wall. 566 (21 L. Ed 251) ; *Witter v. Board,* 112 Iowa, 380. Under the Witter case we shall assume that the city had power to purchase real estate for the purpose of donating it to the railway company, and that in so doing it had the right to create an indebtedness therefor which did not exceed the constitutional limit. See, also, *Mullarkey v. Town,* 19 Iowa, 21; *Austin v. District,* 51 Iowa, 102.

But, as we have said, it had no express power to borrow money for this purpose, and no authority to issue negotiable bonds therefor. The implied authority, if any, was to issue warrants or other nonnegotiable instruments recognized by law or universal custom; that is to say, to the

1. CITIES AND TOWNS: railroad aid: bonds: validity.

party from whom it purchased the land, it might execute warrants in the usual form, or perhaps nonnegotiable promissory notes. This was the extent of its implied power. Even where power to borrow money is expressly given, we have held that there is no implied authority to issue negotiable bonds to accomplish that end. *Heins v. Lincoln,* 102 Iowa, 77; *Clark v. City,* 19 Iowa, 199; *Dively v. City,* 21 Iowa, 569; *Williamson v. City,* 44 Iowa, 88; Witter v. Board, *supra.* This case is even stronger than some of those cited, in that power to borrow money here arises by implication alone. There is a conflict in the authorities upon the subject we are now discussing, and perhaps the numerical weight is against out position. But, aside from chance remarks in *City v. Weare,* 59 Iowa, 98, and *Hull v. Marshall County,* 12 Iowa, 142, which are explained in the Witter and Hines cases, we have consistently adhered to the rule announced. The Mullarkey case, in 19 Iowa, 23, .does not hold that a city has power to issue negotiable bonds except perhaps as a refunding scheme. The script or notes issued originally in that case were not in the form of bank bills, nor were they intended to circulate as money. They were, as we understand it, warrants; and there is no showing that the refunding bonds were negotiable. An examination of the Hull case in 12 Iowa, 142, will show that, if it is an authority for anything, it is in favor of appellee's contention. We shall in a subsequent paragraph again refer to these decisions.

But it is argued that as the city had the right to refund its indebtedness under chapter 15, Acts 24th General Assembly, and could have issued warrants in payment for the land, these bonds should be treated as valid. This

2. SAME.

would be a most dangerous doctrine to announce. In effect it means this: If an unauthorized act may be ratified, it is binding, whether ratified or not. Suffice it to say, the city has never refunded nor has it shown any disposition to do so, and the cross-petition is based upon invalid bonds. The mere fact that the city might fund its

indebtedness and issue bonds therefor is no reason why these illegal bonds should be vitalized.   Moreover, there was no outstanding indebtedness of the city, evidenced by warrants, which could be refunded under chapter 15, Acts 24th General Assembly.   The city had not executed warrants to any one, and was not attempting to fund its indebtedness when it executed the bonds in question.   They were delivered to the railway company as a pure gratuity.   The cases cited by appellant are not in point on this proposition.

·  II.   Further, it is argued that recovery may be had on these bonds as nonnegotiable instruments; that is to say, it is argued that the court may disregard the words of negotia-bility and enforce the instruments as if they were warrants issued by the city, and many cases cited are in support of this proposition.

3. MUNICIPAL BONDS: recovery upon.

The cases cited are:  *Sioux City v. Weare,* 59 Iowa, 95; *Dively v. Cedar Falls,* 21 Iowa, 565; *Clark v. Polk County,* 19 Iowa, 248; *Pacific Company v. Clarksdale,* 74 Fed. 528 (20 C. C. A. 635.)   What is said in the Weare Case is purely obiter, and not binding upon us.   In the Dively case the court expressly held that if the instrument issued by the city was void no recovery could be had thereon; and in the same case it is said that, if the script in that case was issued in excess of authority, that was a complete defense to the action.   There is no holding in that case that recovery could be had on the script.   Our rule is that when municipal bonds are executed without authority they are void, and no recovery can be had thereon.   *Hull v. County,* 12 Iowa, 142; *McPherson v. Foster,* 43 Iowa, 48; *Chamberlain v. City,* 19 Iowa, 395.

The great weight of authority in this country is that, if negotiable paper is issued without authority of law, no action can be maintained thereon for any purpose.   *Mayor v. Ray,* 19 Wall. 468 (22 L. Ed. 164); *Merrill v. Monticello,* 138 U. S. 673, (11 Sup. Ct. 441, 34 L. Ed. 1069); *Hedges v. Dixon Co.,* 150 U. S. 182, (14 Sup. Ct. 71, 37 L.

Ed. 1044); Dodge v. Memphis (C. C.) Fed. 165. The only cases to the contrary seems to be the Weare case, *supra,* and *Pacific Co. v. Clarksdale,* 74 Fed. 528, (20 C. C. A. 635.) But what is said in each is pure obiter, as an examination will show. On principle, the rule we have announced must be correct. Recovery, if had upon the instrument, must be as it is written; and, if void, there can be no recovery thereon. To hold otherwise would be contrary to all sound notions of law and procedure. It would also allow one to strike out the illegal and void part of an indivisible contract, and to recover in every instance upon the part which is good. It does not lie in the mouth of the holder of a void instrument to say that he will strike out the illegal part, and insist only upon that which he avers to be legal. If the law were otherwise, one might recover upon even a forged instrument, or one illegal in part which is indivisible in form or substance. Doubtless there are many cases, upon warrants negotiable in form, wherein recovery has been allowed; but such warrants are not in fact negotiable, and words of negotiability are, in such cases, clearly surplusage. *National Bank v. Ind. Dist.,* 39 Iowa, 490; *Wall v. County,* 103 U. S. 74, (26 L. Ed. 430); *Clark v. Polk Co.,* 19 Iowa, 248; *Clark v. Des Moines,* 19 Iowa, 200-290; *Keller v. Hicks,* 22 Cal. 460, (83 Am. Dec. 78); *Dana v. San Francisco,* 19 Cal. 490.

III. Again, it is argued that, prior to the decision in the Heins and Witter cases, which were decided after the bonds in this case were issued and delivered, this court was committed to the doctrine that a city might issue negotiable bonds in such cases as this, and that to now hold to the contrary would be in violation of the constitutional provision with reference to the impairment of the obligations of contracts. Many cases are cited in support of this contention, although none of them, as it seems to us, go so far as to hold that the constitutional limitation applies to a judicial decision, unless that decision be the construction

4. CONSTITUTION-
AL LAW:
change in ju-
dicial decis-
ions: impair-
ment of con-
tracts.

of a particular statute, under which the bonds or contracts in each case were executed. In analyzing the various cases on this subject regard must be had to the tribunal in which they arose. If the case originated in or was removed to the federal court, that court was at liberty to follow such decision of the state court as it saw fit to adopt, and might, of course, consider the equities of the particular case in adopting its rule. The federal Supreme Court has, in many cases where there has been a change of view by the state court, followed the first decision of that court; and if the action was to enforce contract rights the United States courts have often followed the law as it was declared by the state court when the contract was entered into. In other words, federal courts, on questions of general law, are not bound by state court decisions, and may adopt such rules as they think best, sustained by reason and authority. They have also at times applied a sort of equitable doctrine, and held to a rule which sustains a contract legal when entered into according to the then existing decisions of the state court, but which afterwards, on further reflection, were held illegal by the state court. *Los Angeles v. Water Co.,* 177 U. S. 558 (20 Sup. Ct. 736, 44 L. Ed. 886) ; *Great Southern Co. v. Jones,* 193 U. S. 532 (24 Sup. Ct. 576, 48 L. Ed. 778) ; *National Ass'n. v. Brahan,* 193 U. S. 635, (24 Sup. Ct. 532, 48 L. Ed. 823) and case cited. *Vide,* also *Gelpecke v. Dubuque,* 1 Wall. (U. S.) 175 (17 L. Ed. 520) ; *Wade v. Travis Co.,* 19 Sup. Ct. (U. S.) 715 (43 L. Ed. 1060). If the case goes directly from a state court to the Supreme Court of the United States, no such question as is here presented arises, for a change of judicial decision is not a law impairing the obligations of contracts. *National Assn. v. Brahan,* 193 U. S. 635 (24 Sup. Ct. 532, 48 L. Ed. 823,) affirming 80 Miss. 407 (31 South. 850, 57 L. R. A. 793). This distinction is clearly pointed out in *Central Land Co. v. Laidley,* 159 U. S. 103 (16 Sup. Ct. 80, 40 L. Ed. 91.) See, also *R. R. Co. v. McClure,* 10 Wall. (U. S.) 511 (19 L. Ed. 997).

A judicial decision is not a law. It is merely evidence of what the law is, and a change of decision is not the promulgation of a new law. Hence the constitutional provision does not apply to judicial decisions. *Storrie v. Cortes,* 90 Tex. Sup. 283 (38 S. W. 154, 35 L. R. A. 666); *Alferitz v. Borgwardt,* 126 Cal. 201, (58 Pac. 460); *Ray v. Gas. Co.,* 138 Pa. 576 (20 Atl. 1065, 12 L. R. A. 290, 21 Am. St. Rep. 922.) We are inclined to the view that there is nothing in the Constitution which forbids a change of judicial opinion, except it be with reference to a particular statute, although we must confess that there are some strong cases to the contrary. As supporting our view, see Storrie v. Cortes, *supra; Center Twp. v. State,* 150 Ind. 168 (49 N. E. 961); *Land Co. v. Hotel,* 134 N. C. 397 (46 S. E. 748).

But we need not speculate upon this proposition, for there are only two cases which give any color to appellant's contention, and in each of them the language used was obiter. In the Weare case, there was a collateral attack upon the bonds issued by the municipality; and what was said with reference to the issuance of negotiable bonds, and as to the right to recover thereon, is so clearly obiter that we need say no more as to that case. It may be observed that that part of the decision relating to the issuance of negotiable bonds was based upon a then overruled case from the Supreme Court of the United States. There is no showing that the appellant in this case relied upon any of the so-called opinions of this court holding to the view now taken by it, and there is no basis for any sort of equitable estoppel.

IV. Lastly, it is contended that appellant is entitled to recover on the common counts as for benefits conferred upon the city. That issue in no way affects plaintiff's case, but it is important to the city. Let us see what benefits, if any, the bondholders conferred upon the city. The city donated its bonds to the railway company, and the railway sold them to appellants. The railway purchased the depot grounds,

5. VOID MUNICI-
PAL BONDS:
*quantum
meruit.*

and paid for them out of its own money. The original owner of the ground has received his money and is making no complaint. If any benefit has been conferred by the bondholders upon any one, it was upon the railway company. The city's act was a pure donation, and as the original owner has received his money no equities can be worked out through him. The bonds or the land was donated to the railway company, on the theory, perhaps, of some incidental benefit to the city; but the city did not obligate itself to make the bonds good, so that no equity can be worked out through the railway company. If the city had undertaken to purchase the property and had given the landowner worthless paper, doubtless the vendor would have some sort of action against the city; but these are not the facts here. The city has the incidental benefit of depot grounds which have been fully paid for, and the railway company has had the benefit of the bondholders' money. It received this through bonds donated to it by the city; but the city is not bound to make its donation good. The case is ruled in this respect by *Hedges v. Dixon Co.,* 150 U. S. 182 (14 Sup. Ct. 71, 37 L. Ed. 1044); *Coquard v. Village,* 192 Ill. 335 (61 N. E. 660); *Travellers' Ins. Co. v. Johnson,* 99 Fed. 663 (40 C. C. A. 58, 49 L. R. A. 123.) No recovery can be had on the *quantum meruit.*

In closing it is well to say that appellants are not and cannot be innocent holders of the bonds in suit. They were charged with notice of the authority and power of the municipality as conferred by statute. This is so fundamental that we need only cite *County v. Field,* 111 U. S. 83 (4 Sup. Ct. 315, 28 L. Ed. 360); *East Oakland v. Skinner,* 94 U. S. 255 (24 L. Ed. 125); *Township of Grant v. Township of Reno,* 107 Mich. 409 (65 N. W. 376); *Uncas Bank v. City,* 115 Wis. 340 (91 N. W. 1004.)

The demurrers were properly sustained, and the judgment is *affirmed.*